**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
Adam J. DeBow,    SBN 305809
350 University Avenue, Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants,
CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

FRANK LEE DEARWESTER,

            Plaintiff,

vs.

SACRAMENTO    COUNTY    SHERIFF'S
DEPARTMENT;  SHERIFF  SCOTT  JONES;
CHAPLAIN  TOLIVER;  DEPUTY  SHERIFF
CORPORAL GIL; DOES 01-25,

            Defendants.

_____/

Case No.: 2:13-CV-02066-MCE-EFB P (TEMP)

**INDEX OF EXHIBITS IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

**No hearing pursuant to Local Rule 230(l)**

Complaint Filed: 10/14/13

        Defendants CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL hereby submit the following Index of Exhibits in support of its Motion for Summary Judgment or, in the alternative, Summary Adjudication:

| | |
|---|---|
| EXHIBIT A | Plaintiff's Complaint |
| EXHIBIT B | Plaintiff's verified Response to Requests for Admission in the case matter entitled *Dearwester v. County of Sacramento*, USDC Eastern District Case No.: 2:13-CV-02064-MCE-KJN |
| EXHIBIT C | Declaration of Lieutenant Ed Yee |

1

**INDEX OF EXHIBITS IN SUPPORT OF DEFENDANT COUNTY OF SACRAMENTO'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**
{01530041.DOCX}

| EXHIBIT D | Declaration of Chaplain Terry Toliver |
|---|---|
| EXHIBIT E | Sacramento County Sheriff's Department Operations Order 8/12 on Religious Accommodation |
| EXHIBIT F | April 30, 2013, memorandum drafted by Chaplain Terry Toliver |
| EXHIBIT G | Removal Recommendation Form |
| EXHIBIT H | Declaration of Deputy Benjamin Gil |
| EXHIBIT I | Inmate Incident Report - April 21, 2013 |
| EXHIBIT J | Photograph of items located in Plaintiff's Cell |
| EXHIBIT K | Relevant portions of the Sacramento County Sheriff's Department Main Jail Inmate Handbook: cover page, page 37, page 38, and pages 50-60 |
| EXHIBIT L | Declaration of Mary Kimbrell |

Date: April 22, 2016

Respectfully submitted,

PORTER SCOTT
A PROFESSIONAL CORPORATION

By    /s/ John R. Whitefleet
        John R. Whitefleet
        Adam J. DeBow
        Attorneys for Defendant
        SACRAMENTO COUNTY

**2**

**INDEX OF EXHIBITS IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

{01530041.DOCX}

# EXHIBIT A

Case 2:1~~MAINTAIN~~ Document 1   Filed 10/04/13   Page 1 of 28

MAINTAIN ON PAPER



FILED

OCT -4 2013

CLERK, U.S. DIS~~~~~~COURT
EASTERN DISTRICT O~~~~~~RNIA



DEPUTY CLERK

Plaintiff's Name FRANK LEE DEARWESTER
Inmate No. ~~CDC: AP9119~~
Address ~~NKSP, P.O. BOX 5005~~  P.O. BOX 8800
        ~~DELANO, CA 93216~~  CORCORAN, CA 93212

———————IN THE UNITED STATES DISTRICT COURT———————
FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANK LEE DEARWESTER                    2:13 - CV - 2066 ~~~~~ DAD PC

(Name of Plaintiff)                     (Case Number)

vs.                                     COMPLAINT

SACRAMENTO COUNTY SHERIFF'S             Civil Rights Act, 42 U.S.C. § 1983
DEPARTMENT; SHERIFF SCOTT JONES;
CHAPLAIN TOLIVER; DEPUTY SHERIFF
CORPORAL GIL; DOES 01-25.
(Names of all Defendants)

1. Previous Lawsuits (list all other previous or pending lawsuits on back of this form):

   A.   Have you brought any other lawsuits while a prisoner? Yes X No ___

   B.   If your answer to A is yes, how many? _____
        Describe previous or pending lawsuits in the space below.
        (If more than one, use back of paper to continue outlining all lawsuits.)

        1. Parties to this previous lawsuit:

        Plaintiff (PREVIOUS LAWSUITS ATTACHMENT ATTACHED)

        Defendants _____
        _____
        _____

        2  Court (if Federal Court, give name of District; if State Court, give name of County)
        _____

        Docket Number _____   4. Assigned Judge _____

        5. Disposition (For example, Was the case dismissed? Was it appealed? Is it still pending?)
        _____

        6. Filing date (approx.) _____   7. Disposition date (approx.) _____

1

II.    Exhaustion of Administrative Remedies

A.    Is there an inmate appeal or administrative remedy process available at your institution?

Yes **X** No___

B.    Have you filed an appeal or grievance concerning <u>ALL</u> of the facts contained in this complaint?

Yes **X** No___

If your answer is no, explain why not_____

_____

_____

C.    Is the process completed?

Yes **X**          If your answer is yes, briefly explain what happened at each level.
04/22/13 GRIEVANCE (3 PGS) ESSENTIALLY DENIED 05/22/13 IN COMMENTS AND
REPLY OF SAME DATE. 05/12/13 GRIEVANCE/APPEAL DENIED W REPLY. 05/17/13
APPEAL TO FACILITY COMMANDER (3 PGS) IGNORED BY SGT. YEE. CHAPLAIN TOLIVER THEN
INITIATED A RABBI MEETING TO CONFIRM THAT I'M NOT JEWISH 06/14/13. 05/17/13 LT. MASSA
SENT DENIAL TO APPEAL AND MY 06/22/13 APPEAL REQUESTING A STATEMENT OF EXHAUSTION
No___          If your answer is no, explain why not. WAS IGNORED. MY 06/25/13 B.O.S.
                                                                  CLAIM WAS ALSO IGNORED.

_____

_____

_____

_____

NOTICE:    Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to
prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in
any jail, prison, or other correctional facility until such administrative remedies as are available are
exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process
available at your institution, you may not file an action under Section 1983, or any other federal
law, until you have first completed (exhausted) the process available at your institution. You are
required to complete (exhaust) the inmate appeal or administrative remedy process <u>before</u> filing
suit, regardless of the relief offered by the process. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001),
McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). Even if you are seeking only money
damages and the inmate appeal or administrative remedy process does not provide money,
you <u>must</u> exhaust the process before filing suit. <u>Booth</u>, 532 U.S. at 734.

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use Item B for the names, positions and places of employment of any additional defendants.)

A.   Defendant _____ is employed as _____

at _____

B.   Additional defendants (ADDITIONAL PARTIES ATTACHMENT ATTACHED)

IV.   Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra-sheets if necessary.)

I WAS RECEIVING THE SCMJ "KOSHER" DIET FOR OVER A YEAR - APPROVED BY THEN CHAPLAIN DAVID CLEMENTS, AS MEMORIALIZED BY GRIEVANCE 04/06/12. AN INCIDENT RESULTING FROM THE FLOOR'S INMATE WORKERS' EXTORTING ME OF SAID KOSHER DIET, WAS USED AS A MEANS FOR DEPUTY SHERIFF CORPORAL GIL TO PERSECUTE ME. MY RELIGION/SENSIBILITIES DID NOT ALIGN WITH GIL'S LIFESTYLE. TOO MUCH CREDIBILITY WAS BESTOWED ON THE WORKERS AND THEY WERE PERMITTED TO COLLABORATE AND BE INTERVIEWED TOGETHER. GIL WROTE A REPORT THAT NOT ONLY RESULTED IN MY LOSS OF PRIVILEGES FOR A MONTH; BUT HE ALSO CC'D THE CHAPLAIN - WHICH WAS TARGETED EFFORT TO HAVE ME DISQUALIFIED FROM THE RELIGIOUS DIET & SUBJECT ME AGAIN TO THE OFFENSIVE "FOOD" AT SCMJ. CHAPLAIN TOLIVER WASN'T INTERESTED IN THE TRUTH; ONLY WANTED TO FURTHER PUNISH/PERSECUTE ME. I NEVER CLAIMED JUDAISM. "KOSHER DIET" IS A MISNOMER. IT'S BASICALLY A "RELIGIOUS" DIET THAT DOESN'T HAVE THE MUSLIM RAMADAN ELEMENT. SCMJ'S KOSHER DIET SHOULD BE CALLED "RELIGIOUS

V. Relief.   MEAT ALTERNATIVE (RMA)" OR "RELIGIOUS DIET"

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

I'M REQUESTING MONETARY DAMAGES FOR THE PERSECUTION AND DISCRIMINATION. THIS GROUP OF ACTIONS AGAINST ME WAS UNCONSTITUTIONAL AND EXEMPLARY/PUNITIVE DAMAGES ARE APPROPRIATE WHERE DEFENDANTS WERE ACTING AS INDIVIDUALS.

I declare under penalty of perjury that the foregoing is true and correct.

Date 09/25/13

(revised 9/17/03)

01  I. PREVIOUS LAWSUITS Attachment:

02  C. 1. PLAINTIFF: ABOVE

03     DEFENDANTS: SACRAMENTO COUNTY SHERIFF'S DEPT; SHERIFF SCOTT JONES

04  2. SUPERIOR COURT OF CA - SACRAMENTO

05  3. 34-2012-00129733

06  4. JUDGE: UNKNOWN

07  5. DISPOSITION: PENDING

08  6. FILED: 08/08/12

09  7. DISPOSITION: PENDING

10  D. 1. ABOVE

11     SACRAMENTO COUNTY SHERIFF'S DEPT.; SHERIFF SCOTT JONES

12  2. SUPERIOR COURT OF CA - SACRAMENTO

13  3. 34-2012-00132490

14  4. UNKNOWN

15  5. PENDING (DEF. IN DEFAULT)

16  6. 09/25/12

17  7. PENDING

18  E. 1. ABOVE

19     CAPITAL ONE AUTO FINANCE, INC., A DIVISION OF CAPITAL ONE, N.A.;

20     ACCURATE ADJUSTMENTS, INC.; PHILIP CORR

21  2. SUPERIOR COURT OF CA - SACRAMENTO

22  3. 34-2012-00129890

23  4. JUDGE UNKNOWN

24  5. PENDING

25  6. FILED 08/10/12

26  7. PENDING

27

28

Frank Lee Dearwester, CDC: AP9119, xref: 1701654
NKSP, LEGAL MAIL, P.O. Box 5005, Delano, CA 93216

page 1 of 2

01  I. PREVIOUS LAWSUITS ATTACHMENT CONT.:

02  F. 1. ABOVE

03      TONI LOUISE BEACHUM

04  2. SUPERIOR COURT OF CA - SACRAMENTO

05  3. 34-2012-00135579

06  4. UNKNOWN

07  5. PENDING (DEFENDANT IN DEFAULT)

08  6. 01/23/13

09  7. PENDING

10  G. 1. ABOVE

11      JOHN M. O'BRIEN & ASSOCIATES, P.C.

12  2. SUPERIOR COURT OF CA - SACRAMENTO

13  3. 34-2013-00142668

14  4. UNKNOWN

15  5. PENDING

16  6. 04/02/13

17  7. PENDING

18

19

20

21

22

23

24

25

26

27

28

Frank Lee Dearwester, CDC: AF9119, xref: 1701654
NKSP, LEGAL MAIL, P.O. Box 5005, Delano, CA 93216

page 2 of 2

Case 2:13-cv-02066-DAD   Document 1   Filed 10/04/13   Page 6 of 28

May file in person, or mail form to: Clerk, Board of Supervisors, 700 H Street, Rm. 2450, Sacramento, CA 95814
Please keep one (1) copy for your records - Print/Type Only

## CLAIM AGAINST THE COUNTY OF SACRAMENTO

CLAIM NUMBER (Dept. Use ONLY)

1. Claimant's Name  DEARWESTER, FRANK L.
   Last        First        M.I.

2. Date of Birth  07/12/1972

3. Claimant's Address
   SCMJ #1701651, 651 I STREET, SACRAMENTO, CA 95814
   Street (or P.O. Box)        City        State        Zip Code

4. Address Where Correspondence Should Be Sent (if different from above)
   SAME
   Name
   SAME
   Street (or P.O. Box)        City        State        Zip Code

5. Phone Number    N/A            N/A            N/A
   Home          Work          Other

6. Amount of Claim  $

7. Date of Accident / Incident / Loss:  04/30/2013 - PRESENT (ONGOING)

8. Location of Accident / Incident / Loss:  SACRAMENTO COUNTY MAIN JAIL

9. Provide your description of how the Accident / Incident / Loss Occurred:  FOLLOWING AN INCIDENT WHERE
I WAS VICTIMIZED REGARDING MY ASSIGNMENT TO A KOSHER (RELIGIOUS) DIET, I RECEIVED
PERSECUTION FROM SCSD DEPUTY, DISCIPLINE FROM HIS SERGEANT, AND LOSS OF ASSIGNMENT
TO THE KOSHER DIET BY THE CHAPLAIN. I WAS THE VICTIM; YET PRESUMED GUILTY DUE TO
THE LACK OF CAMERA EVIDENCE TO PROVE MY INNOCENCE.        (ATTACHMENT 9)

10. Describe Damage / Injury / Losses being claimed(including prospective Damage / Injury / Losses to the extent it is known
at the time of claim filing)
OTHER PERSONAL INJURY- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (23), NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS (23), OTHER (23), NON-PERSONAL INJURY - CIVIL
RIGHTS TORTS - DISCRIMINATION (08), UNFAIR BUSINESS PRACTICE (07), (ATTACHMENT 10)

11. Name(s) of Public Employee(s) involved  CPL. GIL, SGT. E. YEE, SGT. R. ROBERTS, LT. PATTISON,
CHAPLAIN TOLIVER, CHAPLAIN CLEMENTS, SHERIFF SCOTT JONES, UNKNOWN OTHERS

12. Itemized List of Claimed Expenses / Damages (should equal Line 6)

| ITEM | DOLLAR AMOUNT |
|---|---|
| INFRINGEMENT OF CONSTITUTIONAL RIGHTS | $ |
| PERSONAL INJURIES | $ |
|  | $ |
|  | $ |

Board of Supervisors Stamp

(Please attach any estimates* and/or receipts to your claim)
*1 estimate if repairs are less than about $1,000    **TOTAL CLAIM**  $
*2 estimates if repairs are more than about $1,000

Do Not Write In This Space

Section 72 of the Penal Code states: "Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any
county, city, or district board or officer, authorized to allow or pay the same if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is punishable
either by imprisonment in the county jail for a period of not more than one year, by a fine of not exceeding one thousand dollars ($1,000), or by both such
imprisonment and fine, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine."

13. Signature of Claimant/Representative:  [signature]    DATE  06/25/13

Revised: 04/03

You must present your claim within the time prescribed by Govt. Code Section 911.2.

01  ATTACHMENT 9

02  CPL. GIL THEN SEARCHED MY CELL AND GAVE ME A WRITE-UP WHICH MADE THE

03  CELL SEARCH AN OVERT TOOL WITH WHICH HE COULD INFLICT RELIGIOUS PERSECUTION.

04  THIS WAS IMPLIED BY GIL'S HAVING CONFISCATED A PERFECTLY LEGAL BUSINESS

05  CARD BECAUSE IT WAS FOR "LOAVES AND FISHES," A LOCAL CHARITY ORGAN-

06  IZATION WITH A CHRISTIAN-THEMED TITLE. GIL'S MOTIVE FOR THE CITATION

07  UNDOUBTEDLY WAS TO CHARACTERIZE MY ASSOCIATION WITH THIS CHARITY AS A CLEARLY

08  NON-JEWISH ACT. HE THEN EVIDENCED HIS INTENT BY HIS UNPRECEDENTED

09  CARBON COPY TO THE CHAPLAIN'S OFFICE (REPORT NUMBER 0957187608).

10  CHAPLAIN CLEMENTS APPROVED MY ASSIGNMENT TO THE RELIGIOUS DIET AS A

11  CHRISTIAN, BASED ON ROMANS 14:13-23. AFTER OVER A YEAR, CHAPLAIN

12  TOLIVER RETRACTED SAID RELIGIOUS DIET; BASICALLY SAYING THAT I MUST BE

13  JEWISH TO PARTAKE. THE "KOSHER" DESCRIPTOR IS SOMETHING OF A MISNOMER

14  BECAUSE THE EXACT SAME RELIGIOUS DIET IS CALLED "HALAL" FOR

15  MUSLIMS.

16    I AM ATTACHING ALL RELATED DOCUMENTS. HOWEVER, THE SHORT AND

17  SIMPLE OF THIS PLIGHT IS MY 04/06/12 GRIEVANCE WHICH CAUSED

18  CHAPLAIN CLEMENTS TO APPROVE MY RELIGIOUS DIET. EVERYTHING ELSE

19  IS JUST IRRELEVANT COMPLICATION, EXTORTION, VIOLENCE, RELIGIOUS

20  DISCRIMINATION, MISCONDUCT AND BIAS.

21

22

23

24

25

26

27

28

1 OF 1

01 ATTACHMENT 10

02 PROFESSIONAL NEGLIGENCE (10), OTHER CIVIL PETITION - CIVIL HARASSMENT (43),

03 U.S. CIVIL STATUTE VIOLATIONS: OTHER PERSONAL INJURY - INTENTIONAL AND/OR NEGLIGENT

04 INFLICTION OF EMOTIONAL DISTRESS (360), OTHER CIVIL RIGHTS - VIOLATIONS OF

05 CONSTITUTIONAL RIGHTS (INFRA) (440), (530), (550), PRISON CONDITIONS/CONDITIONS

06 OF CONFINEMENT (555), CONSTITUTIONALITY OF STATE STATUTES (950) - SHOULD

07 SCSD/SCMJ INVOKE ANY SUCH STATUTE.

08 U.S. CONSTITUTIONAL VIOLATIONS: OF FREEDOM OF RELIGION BY ENFORCING LAWS

09 RESPECTING AN ESTABLISHMENT OF RELIGION AND PROHIBITING THE FREE

10 EXERCISE THEREOF; FOR THE DEPRIVATION OF LIFE, LIBERTY, AND PROPERTY,

11 WITHOUT DUE PROCESS OF LAW; DENIAL OF RIGHT TO PUBLIC TRIAL WITH AN

12 IMPARTIAL JURY; FOR UNREASONABLE SEARCH AND SEIZURES; FOR PROCEEDING

13 WITHOUT PROBABLE CAUSE OR FOLLOWING ANY ESTABLISHED LAWFUL PARTICU-

14 LARITY OF SEARCH AND SEIZURE; FOR DENIAL OF RIGHT TO PRIVACY, TO BE

15 SECURE IN MY PERSON, HOUSE, PAPERS, AND EFFECTS; FOR DOUBLE JEOPARDY

16 FOR THE SAME OFFENSE(S); FOR DENIAL OF COMPULSORY PROCESS FOR

17 OBTAINING WITNESSES IN MY FAVOR FROM OTHER PODS; FOR DENIAL OF

18 THE RIGHT TO BE CONFRONTED WITH THE WITNESSES AGAINST ME; FOR DENIAL

19 OF THE ASSISTANCE OF COUNSEL FOR MY DEFENSE; FOR ABRIDGEMENT OF MY

20 PRIVILEGES AND IMMUNITIES AS A CITIZEN OF THE UNITED STATES; FOR

21 DENIAL OF EQUAL PROTECTION OF THE LAWS; AND FOR THE INFLICTION OF

22 CRUEL AND UNUSUAL PUNISHMENT. (USCA CONST. AMEND. 1, 4, 5, 6, 7, 8, 14;

23 AND ALL APPLICABLE CALIFORNIA CONSTITUTION ARTICLES)

24      THE SHORT OF IT IS THAT I WAS APPROVED FOR THE RELIGIOUS DIET BY

25 CHAPLAIN DAVID CLEMENTS NOT BECAUSE I CLAIMED TO BE JEWISH OR EVEN

26 THAT I EXPRESSED INTEREST IN LEARNING MORE ABOUT JUDAISM, RATHER,

27 HE APPROVED BASED UPON THE MERITS AND AUTHORITY CITED IN MY

28 ATTACHED GRIEVANCE. THIS GRIEVANCE, DATED 04/06/12, WAS A SUMMARY

01  OF OUR 04/04/12 CONVERSATION. IN IT, I AM VERY CLEAR THAT I AM A

02  CHRISTIAN AND WISHED TO PARTAKE OF THE RELIGIOUS DIET TO COMPLY

03  WITH ROMANS 14.

04     THE NEW CHAPLAIN HAS EXPRESSED TO ME THE FACT THAT THE RELIGIOUS

05  DIET IS EXPENSIVE. THIS IS AN UNFAIR BIAS; AS IS HIS REQUIREMENT

06  THAT I BE JEWISH OR MUSLIM TO CONTINUE PARTAKING OF THE RELIGIOUS

07  DIET. MY 05/12/13 GRIEVANCE, WHICH IS ALSO ATTACHED, WAS NOT MET

08  WITH A PROPER REPLY, BUT RATHER WITH A KITE STATING THAT A RABBI

09  HAD BEEN SCHEDULED TO MEET WITH ME.

2 OF 2

## SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
### CORRECTIONAL SERVICES

### INMATE GRIEVANCE/SUGGESTION

**NAME (OR INITIALS), FIRST, MIDDLE:** DEARMOSTER FRANK LEE
**DOB:** 7-12-32
**XREF NUMBER:** 1301454
**DATE:** 04/04/12
**INMATE'S LOCATION:** BEP02
**DATE AND TIME OCCURRENCE:** 04/04/12

**INSTRUCTIONS:** PLEASE PRINT YOUR NAME ON THE FORM AS IT APPEARS ON YOUR WRISTAND AND INCLUDE YOUR XREF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION, PLEASE PLACE FULL NAMES AND XREF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

**GRIEVANCE/SUGGESTION:** CHAPLAIN DAVID CLEMENTS: THANK YOU FOR VISITING ME ON 4/4/12. I BELIEVE THAT YOU ALSO VISITED ME ON 3/27/12. I WAS CONFUSED BECAUSE ANOTHER INMATE HAD SAID THAT YOU WERE THE MUSLIM CHAPLAIN. I HAD THOUGHT THAT YOU INTRODUCED YOURSELF AS PASTOR. THE 3/8/12 GRIEVANCE THAT YOU REPLIED TO IN WRITING EXPLAINED IN DETAIL MY POSITION AND REASON FOR REQUESTING A KOSHER DIET. ON 4/4 YOU ASKED ME IF THE REASON WAS MUSLIM OR JEWISH. OF THOSE TWO, I SAID "CLOSER TO JEWISH" HOWEVER, THIS DOESN'T MEAN THAT I WISH TO CONVERT/CONFIRM TO JUDAISM. I DO HAVE THE UTMOST IN POSITIVITY THAT I WORSHIP THE SAME GOD. BUT I WILL NOT RENOUNCE MY BELIEF THAT JESUS IS CHRIST. I HAVE BEEN UP FRONT ABOUT THAT (LINE 5 & 6 OF THE 3/8 GRIEVANCE) I WAS CONFUSED ABOUT THE NEED FOR A RABBAI OR THE REQUIREMENT OF PRIOR SYNAGOGUE EXPOSURE. IT'S NOT THE SACRIFICIAL RITUALS THAT I SEEK, BUT RATHER JUST COMPLIANCE WITH GOD'S LAW ABOUT WHAT WE ARE TO CONSIDER FOOD. WHICH ANIMALS ARE CLEAN & WHICH ARE NOT. JESUS IS JEWISH. JESUS ATE KOSHER FOOD. I HAVE SEEN NOTHING IN THE BIBLE TO INDICATE THAT HE ATE RICE, CORN, BEANS, PORK, YEAST, OATS, BARLEY, RYE OR CANNED FOODS. JESUS DECLARED ALL FOODS CLEAN (ROMANS 14:14). BUT THIS DOESN'T MEAN THAT A PIG (OR DOG, TOAD, SCORPION, ETC) IS "FOOD". I AM POSITIVE THAT THERE ARE STILL UNCLEAN ANIMALS BECAUSE EVEN THE UNBELIEVER WON'T EAT CERTAIN ANIMALS. THIS IS ALSO TRUE OF HIGHLY PROCESSED "FOODS". FITNESS FOR HUMAN CONSUMPTION →

**RECEIVING OFFICER (PRINT):** BRENDAN HARRIS
**BADGE NO.:** 2311
**SIGNATURE:**
**DATE/TIME:**

**RECEIVING OFFICER'S/SUPERVISOR'S COMMENTS:**
CHAPLAIN DAVID CLEMENTS
I, SGT, Yes APPROVE YOUR KOSHER DIET IN THE RECOMMENDATION OF THE CHAPLAIN

**SUPERVISOR'S NAME (PRINT):** SGT. E VOE
**BADGE NO.:** 178
**SIGNATURE:**
**DATE/TIME:** 05-03-12

7400-012 (REV. 1.00 PT)

DISTRIBUTION:
WHITE - DIVISION COMMANDER
YELLOW - INMATE FILE
PINK - INMATE

PAGE **ONE** OF ~~THREE~~

**SACRAMENTO COUNTY SHERIFF'S DEPARTMENT**
CORRECTIONAL SERVICES
INMATE GRIEVANCE/SUGGESTION

CHAPLAIN
DAVID CLEMENTS

REQUESTER: FRANK LEE

GRIEVANCE/SUGGESTION: I DON'T KNOW IF YOU HAVE ACCESS TO THE 3/8/12 GRIEVANCE OR NOT SO I'LL REITERATE MY POINTS & AUTHORITIES. ASK YOU TO CONSIDER THIS REQUEST, KNOWING THAT I AM CHRISTIAN.

① THE FOOD AT SCMJ IS CAUSING ME SPIRITUAL TRAUMA AND POSES A STUMBLING BLOCK. IT IS SIN/DEATH TO ME AND I FEEL THAT I NEED TO REPENT FOR EATING IT. ROMANS 14:13, 20,21,23.

② ON THE 6TH DAY OF CREATION GOD MADE MAN & GAVE US DOMINION OVER EVERY LIVING THING, BUT DID NOT SAY EVEN THEN TO EAT EVERYTHING. GENESIS 1:26+29,30.

③ I BELIEVE THAT THERE WERE REASONS FOR THE OLD TESTAMENT RITUALS THAT ARE STILL APPLICABLE TODAY. WASHING WHEN DEFILED, KEEPING FROM CROSS CONTAMINATING, QUARANTINE, STERILIZATION WITH HEAT, ALL CAN BE ATTRIBUTED TO LEVITICAL RITUALS. IT LENDS EXTRA CREDIBILITY TO GODS DEMANDS RE: WHAT ANIMALS WE SHOULD/SHOULD NOT EAT.
= DEUTERONOMY 14:3-21

I AM ASKING FOR A KOSHER DIET BECAUSE WHAT SCMJ IS DISHING IS NOT FOOD: IT IS UNCLEAN, FILTHY, SIN THAT LEADS TO DEATH; SPIRITUALLY AND PHYSICALLY. HUMANITY HAS BEEN CONSUMING THIS WASTE FOR CENTURIES & I'LL BET IT'S A MAJOR REASON WHY WE'RE NOT LIVING 900 YEARS LIKE THE PEOPLE OF NOAH'S TIME. I ASK NOT FOR CONFIRMATION TO JUDAISM, BUT FOR SOMETHING OF A HYBRID. I ASK FOR A MUTUAL RESPECT FOR THOSE CHRISTIANS WHO ARE HAVING ISSUES WITH THE DEFINITION OF "FOOD" HERE AT SCMJ. →

RECEIVING OFFICER (PRINT): BRENDON HULLO

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
CORRECTIONAL SERVICES

CHAPLAIN
DAVID CLEMENTS

INMATE GRIEVANCE/SUGGESTION

| NAME (PRINT) (LAST, FIRST, MIDDLE) | DATE OF BIRTH | XREF NUMBER | DAY |
|---|---|---|---|
| DEARDUESTER, DANY LEE | 1-12-75 | 1701654 | 04/04/12 |

| INMATE'S SIGNATURE | LOCATION | DATE AND TIME OF OCCURRENCE |
|---|---|---|
| *(signature)* | 8E205 | 04/04/12 |

INSTRUCTIONS: PLEASE PRINT YOUR NAME ON THE FORM AS IT APPEARS ON YOUR WRISTBAND AND INCLUDE YOUR XREF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION PLEASE PRINT FULL NAMES AND XREF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

GRIEVANCE/SUGGESTION   Romans 14:13-23 is very clear on this topic of
tolerance regarding food. In this light I don't see anything
wrong with a christian partaking of a vegetarian diet if
he is unable to eat meat, or a kosher diet if he is able
to eat meat. We christians and Jews are two dispensations
of the same human history under the same Yahweh/Adonai/
God. Acts 17.
We ought not tear out another down. For you to approve
my kosher diet is not only to help me individually but to
take a small step toward religious tolerance between
Judaism and Christianity.
I pray that you have this courage. Until then, I fast.
Happy Passover + Easter. God Bless you + yours.

| RECEIVING OFFICER (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| BRENDAN HARRIS | 1312 | *(signature)* | |

RECEIVING OFFICER'S/SUPERVISOR'S COMMENTS

| SUPERVISOR'S NAME (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| | | | |

7400-012 (7421-084 Rev 1/90 PT)

DISTRIBUTION:
WHITE – DIVISION COMMANDER
YELLOW – INMATE FILE
PINK – INMATE

PAGE THREE OF THREE

DATE 04/22/2013                    SACRAMENTO COUNTY SHERIFF'S DEPARTMENT                 TPPRAC
TIME 17:06:16                         INMATE INCIDENT REPORT                              PAGE   1 OF 3

XREF- 1701654  NAME- DEARWESTER      FRANK            LEE            DOB 07/12/1972
HOUSING LOCATION- NMF-NF- 1 - 002 JOSEP          PROJECTED RELEASE DATE-

   REPORT:   NUMBER- 0957187608  TYPE- MAJ  CAT- 3  STATUS- PEND     FACILITY- NMF
             DATE- 04/21/2013  TIME- 1655  OFFICER- 6U2        GLL
             REVIEWER- SGT R ROBERTS #46  WAIVED-     DELIVERED- 04/22/2013  1659
             LAST MODIFIED- 04/22/2013  1659  BY- 2707549

   INCIDENT: DATE- 04/21/2013 TIME- 1545 LOCATION- 8 EAST INDOOR REC.

   VIOLATIONS: RULE NO     DESCRIPTION              CAT  PLEA  DISPO      DATE

          M/B.01     ASSAULTS/BATTERY AGAINST        3
          M/C.06     PROPERTY-FAILURE TO RETUR       3
          M/C.15     PLUMBING, USED FOR UNINTE        2

   HEARING:  DATE- 04/24/2013 TIME- 2359  OFFICER-
             RESULT-
             ROLLUP-   GOOD DAYS: AVAIL____  LOST-   0
             G/W TIME TAKEN FROM CASE _____       CHG ___

   DISCIPLINE: TYPE   FROM: DATE   TIME      TO:  DATE     TIME

NO HEARING WILL BE HELD SOONER THAN 24 HOURS UNLESS YOU WAIVE THIS TIME AND
REQUEST AN IMMEDIATE HEARING.   WAIVED: YES ___   NO ___

*******************************************************************************
*  INMATE              *  HEARING OFFICER    *  FACILITY COMMANDER      *
*                      *                     *                          *
*                      *                     *                          *
*                      *                     *                          *
*                      *                     *                          *
*******************************************************************************

APPEALS REGARDING THE HEARING OFFICER'S DECISION MUST BE MADE WITHIN FIVE (5)
DAYS AND MUST BE IN WRITTEN FORM TO THE DIVISION COMMANDER, WHO WILL MAKE A
FINAL DISPOSITION WITHIN TWENTY (20) DAYS

INCIDENT REPORT NUMBER 0957187608  NARRATIVE TEXT

ADDITIONAL VIOLATIONS:
M/E.03 RUNNING A STORE            CAT 2
M/E.06 CRIMINAL STATUTE (PC 242) CAT 3
M/F.01 CONTRABAND                CAT 2
M/E.02 CONTRABAND-FOOD STORAGE   CAT 2

1545 HOURS, 4/21/2013 (SUNDAY), I, DEPUTY GIL #602, WAS ASSIGNED TO THE
SACRAMENTO COUNTY MAIN JAIL AS A CONTROL/FLOOR OFFICER. DEPUTY DRURY #1322
WAS MY PARTNER.

INMATE FRANK DEARWESTER X-1701654 WAS IN INDOOR RECREATION USING THE HAIR
CLIPPERS. INMATE WORKER MALIK X-4804963 WAS SITTING IN THE WORKERS STATION
WAITING FOR CHOW TO ARRIVE ON THE FLOOR. DEARWESTER TOLD MALIK IN SUMMARY:

                "COME HERE BITCH, COME HERE BITCH."

MALIK DID NOT ENGAGE DEARWESTER AND JUST CALLED HIM A CHILD MOLESTER. WHEN
MALIK WAS BRING BACK THE CHOW CARTS DEARWESTER PUNCHED MALIK ONE TIME WITH HIS
FIST. MALIK PUNCHED DEARWESTER ONCE IN SELF DEFENSE. INMATE WORKER
THOMPSON X4797427 SAW MALIK GET ASSAULTED AND RAN FROM THE 200 POD TO STOP
DEARWESTER FROM ASSAULTING MALIK.

THOMPSON TACKLED DEARWESTER TO THE GROUND. DEARWESTER THEN TRIED TO PUNCH
THOMPSON, SO THOMPSON PUNCHED DEARWESTER TWICE IN THE SIDE OF THE FACE.

I SAW THE ALTERCATION TAKING PLACE AND ORDERED THEM TO STOP FIGHTING. MALIK AND
THOMPSON, WHO WERE ON TOP OF DEARWESTEWR, HOLDING HIM DOWN, GOT OFF AND SAT
DOWN IN THE 200 POD.

DEARWESTER WAS HANDCUFFED WITHOUT INCIDENT. DEARWESTER TOLD ME THE FOLLOWING
IN SUMMARY:

          "I'M SORRY FOR FIGHTING. I FELT LIKE I HAD TO BECAUSE HE CALLED
          ME A CHILD MOLSTER AND HAS BEEN HARASSING ME ABOUT MY KOSHER FOOD
          TRAY. I HURT ON THE SIDES OF MY FACE, BUT I DO NOT NEED MEDICAL
          ATTENTION. I DO NOT WANT TO PRESS CHARGES. I HIT HIM FIRST."

I SPOKE WITH MALIK REGARDING THE INCIDENT. HE TOLD ME THE FOLLOWING IN
SUMMARY:

          "I WAS JUST SITTING IN MY CHAIR IN MY WORK STATION WHEN HE
          (DEARWESTER) CALLED ME A BITCH; SO I CALLED HIM A CHILD
          MOLSTER. WHEN I WALKED OVER TO GET THE CHOW CARTS, I MADE
          SURE TO STAY AWAY FROM HIM. WHEN I WAS PULLING THE CART BACK
          HE CAME OVER AND PUNCHED ME ONCE IN THE FACE. I PUNCHED HIM
          BACK AND THEN THOMPSON CAME OVER AND TACKLED HIM TO THE GROUND.

DATE 04/22/2015      SACRAMENTO COUNTY Sheriff's Department      Page 15 of 28  TPRAC
TIME 17:06:16                    INMATE INCIDENT REPORT                        PAGE    3 OF 3

INCIDENT REPORT NUMBER- 095/187608  NARRATIVE TEXT

THOMPSON PUNCHED HIM TWICE BECAUSE DEARWESTER WAS TRYING TO HIT
HIM. THEN YOU GUYS (DEPUTIES) CAME. DEARWESTER HAS BEEN HARASSING
THE OTHER WORKERS, POKING THEM WITH A STICK THROUGH THE TOILET.
HE IS UPSET BECAUSE WE WILL NOT GIVE HIM AN NORMAL TRAY
ON TOP OF HIS KOSHER TRAY."

I SPOKE WITH INMATE THOMPSON REGARDING THE INCIDENT. HE TOLD ME THE FOLLOWING
IN SUMMARY:

I SAW DEARWESTER PUNCH MALIK, SO I RAN FROM THE 200 POD TO HELP HIM.
I TACKLED DEARWESTER TO THE GROUND, BUT HE TRIED TO PUNCH ME, SO I
HIT HIM TWICE IN THE FACE. THEN YOU GUYS CAME AND WE BACKED OFF.
HE HAS BEEN HARASSING THE OTHER WORKERS POKING THEM WITH HIS T.V.
CHANGER STICK. HE JUST WANTS A NORMAL TRAY ON TOP OF HIS KOSHER DIET."

DEARWESTER HAD REDNESS AROUND BOTH SIDES OF HIS FACE AND COMPLAINT OF PAIN.

A CELL SEARCH OF DEARWESTER'S CELL #102 REVEALED THE FOLLOWING ITEMS OF
CONTRABAND.

-3 FOOD TRAYS (FROM NORMAL CHOW, NOT FROM KOSHER).
-WASHER SHARPENED TO CUT OBJECTS.
-A STORE "WANTED/4 SALE SHEET" ITEMS LISTED TO SELL, (PLAIN BAGEL, ENGLISH
MUFFIN, WHOLE BELL PEPPER, WHOLE TOMATO, WHOLE BANANA. THESE ITEMS ARE ONLY
ON KOSHER DIET TRAYS.
- LOAVES & FISHES BUSINESS CARD, W/DEARWESTER'S HANDWRITING READING "YOU BROKE?
NEED A VISITOR? WRITE THEM A LETTER & GET ON THE WAITING LIST. $15.00/MO. +
WEEKLY SOCIAL VISITS.
-33 BAGS OF CARROTS FROM KOSHER DIET TRAYS.
-SEVERAL STYROFOAM CUPS WITH THE BOTTOMS CUT OUT IN HIS TOILET BOWL. THE WATER
IN THE TOILET BOWL WAS REMOVED.

DEARWESTER PUNCHED MALIK A VIOLATION OF P.C. 242.

THE CHAPLIN WAS NOTIFIED OF THE INCIDENT AND WAS FORWARDED A COPY OF THIS
WRITE-UP.

******* END OF REPORT *******

**SACRAMENTO COUNTY SHERIFF'S DEPARTMENT**
CORRECTIONAL SERVICES

IN RE: INCIDENT REPORT
NUMBER 0857/870DB

**INMATE GRIEVANCE/SUGGESTION**

13 MAY 13 AM 10:19

| NAME (PRINT LAST, FIRST, MIDDLE) | DATE OF BIRTH | XREF NUMBER | DATE |
|---|---|---|---|
| DEARWESTER FRANK LEE | 7-12-72 | 170659 | 4-22-13 |

| INMATE SIGNATURE | INMATE LOCATION | DATE/TIME OF INCIDENT/OCCURRANCE |
|---|---|---|
| | 8PH2 | 4-22-13 17:06:34 |

INSTRUCTIONS: PLEASE PRINT YOUR NAME ON THE FORM AS IT APPEARS ON YOUR WRIST BAND AND INCLUDE YOUR XREF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION, PLEASE PRINT FULL NAMES AND XREF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

GRIEVANCE/SUGGESTION: CORPORAL GIL (602) IS ADDING INSULT TO INJURY IN THIS MATTER. I AM VICTIMIZED BY THE WORKERS AND MISROUTED BY THE REPORT. AN UNDUE LEVEL OF TRUST AND CREDIBILITY IS BESTOWED UPON INMATE WORKERS STEVE ORTEGA (THE BOSS), SEAN THOMPSON (HIS BODYGUARD), AND SHIRAZ/PAK MALIK X.

BEGINNING ON APRIL 5, 2013, ORTEGA AND MALIK WERE TRYING TO EXTORT ME OF MY KOSHER MEAL. ORTEGA DEMANDED THAT I GIVE THEM MY MEALS AND IN RETURN HE OFFERED TWO REGULAR TRAYS. I DECLINED. HE THEN SPOKE TO VARIOUS CELLS IN MY POD AND INCITED MY MISTREATMENT — GUISED AS DUE TO MY CHARGES. AFTER 24 HOURS OF THE INTENSE HARASSMENT FROM THE POD AND THE WORKERS, I OFFERED ORTEGA SEVEN OF MY KOSHER PEANUT BUTTERS TO APPEASE HIM AND GET HIM TO STOP THE TREATMENT. HE AND MALIK INSTEAD SAID THAT I HAVE TO GIVE THEM SEVEN PER DAY. I DECLINED VIGOROUSLY EXPRESSING MY DISCONTENT WITH PLENTY OF EXPLETIVES. ORTEGA SAID "YOU'RE DEAD THEN, YOU CHOMO PIECE OF SHIT." MALIK BEGAN MISHANDLING MY KOSHER MEALS AND TRYING TO "HIT ME THROUGH MY FOODPORT. (SEE CAMERA RECORD OF FOOD SERVICE SINCE 5TH).

WORKERS NO LONGER PROVIDING ME WITH SOAP, KITES, OR ANY OTHER COMMON DUTIES SUPPOSED TO DO FOR ANYONE. I DON'T EVEN GET A SPOON AT CHOWTIME. THEY HAVE THE POD REFUSING TO DO ANYTHING FOR ME (PASS BOOKS/NEWSPAPERS) AND SOME HAVE EVEN TAKEN TO STEALING FROM ME AS WELL.

ON THE DATE OF THE REPORT, I WAS USING THE HAIRCLIPPER AT CONTROL AND MALIK WAS SITTING AT THE WORKER STATION BY 200 POD. NO WORDS WERE EXCHANGED WHATSOEVER. IF HE CALLED ME A NAME, I DIDN'T HEAR IT. I GOT DONE ABOUT THE TIME MALIK WAS PULLING THE CHOW CART. I CHECKED IN AT CONTROL & SAID I WAS DONE, THANKS AND

| RECEIVING OFFICER (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| GIL | 602 | | 4/23/13 0957 |

RECEIVING OFFICER'S/SUPERVISOR'S COMMENTS:
YOU NEVER SPOKE TO US (DEPUTIES) REGARDING THE EXTORTION OF YOUR KOSHER MEAL NOT PROVIDING SOAP, KITES & OTHER COMMON DUTIES. PLEASE BRING THESE THINGS TO THE ATTENTION OF DEPUTIES EARLIER.

| SUPERVISOR'S NAME (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| 587 | 150 | | 5/22/13  224 |

7400-012 (7421-084 Rev. 1/90 (RT)

DISTRIBUTION:
WHITE – DIVISION COMMANDER
YELLOW – INMATE FILE
PINK – INMATE

PAGE ONE OF THREE

# SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL SERVICES

IN RE: INCIDENT REPORT
NUMBER: 09511760B

## INMATE GRIEVANCE/SUGGESTION

| | | | |
|---|---|---|---|
| DEARWESTER, FRANK LEE | 7-12-72 | 1701559 | 4-22-13 |
| INMATE SIGNATURE | INMATE'S LOCATION | DATE/TIME OF OCCURRENCE |
| Frank Dearwester | 56192 | 4-12-13 7:00 p.m. |

**INSTRUCTIONS:** PLEASE PRINT YOUR NAME ON THE FORM AS IT APPEARS ON YOUR WRISTBAND AND INCLUDE YOUR XREF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION, PLEASE PLACE FULL NAMES AND XREF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

**GRIEVANCE/SUGGESTION:** HEADED BACK TO MY CELL, MALIK AND I ENDED UP WALKING TOWARD 100 POD TOGETHER. HE PULLED THE CART AROUND THE B6 POLE BY CONTROL. AS I WAS TURNING LEFT TOWARD 100 POD, HE BECKONED ME OVER. I THOUGHT HE WAS GOING TO GIVE ME MY TRAY. BUT WHEN I SAW THE LOOK ON HIS FACE I KNEW HE HAD OTHER PLANS. HE LUNGED AT ME AND I DODGED AND PUNCHED HIM ONCE IN THE CHEEK. I STUMBLED AND THOMPSON STARTED PUNCHING MY TEMPLES THEN GRABBED ME IN A HEADLOCK WHILE MALIK WAS PUNCHING MY SIDES FROM BEHIND. I COULDN'T BREATH OR MAKE ANY NOISE OR MOVE MY ARMS. IT FELT LIKE A COUPLE OF MINUTES BEFORE I COULD BREATH OR MAKE NOISE. AS I HEADED FOR THE FLOOR, I HEARD THOMPSON YELL "GET ON THE GROUND" AS IF HE/ROD WAS ON JAN'S SIDE INSTEAD OF BEING AN ATTACKER. I WASN'T POSITIVE IT WAS EVEN THOMPSON UNTIL HE YELLED. I ONLY HIT MALIK ONCE + THAT WAS IN DEFENSE. I NEVER SWUNG AT OR EVEN SAID THOMPSON. HE LAID IN WAIT BEHIND THE CHOW CART TO JUMP ME WITH MALIK. IT WAS A SETUP AND THEY STAGED IT BY THAT POLE SO THAT CONTROL COULDN'T SEE THEM.

DEPUTIES TOOK CONTROL + I OFFERED NO RESISTANCE BECAUSE I WAS NOT THE AGGRESSOR. I TOLD GIL "I APOLOGIZE FOR BEING INVOLVED IN THIS. I APPRECIATE THAT YOU GUYS LET ME USE THE HAIRCLIPPER AND MEAN NO DISRESPECT BY THIS." I ALSO SAID THAT STEVE (ORTEGA) AND "PAKI" (MALIK) HAVE BEEN EXTORTING ME FOR MY KOSHER MEALS AND THAT ORTEGA HAS THE WHOLE POD HARASSING/THREATENING ME ABOUT MY CHARGES. I NEVER SAID "I'M SORRY FOR FIGHTING" OR "I FELT LIKE I HAD TO..." AS I WAS JUST DEFENDING MYSELF. I NEVER SAID "I DO NOT NEED MEDICAL ATTENTION" BUT ONLY AGREED WHEN TOLD THAT I DIDN'T. I DID NEED ICE + TYLENOL. I WAS NEVER ASKED NOR DID I EVER SAY "I DO NOT WANT TO PRESS CHARGES." I NEVER SAID "I HIT HIM FIRST." HIS ACT

| RECEIVING OFFICER (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| C. Han | | C. Han | 4/13/13  0957 |

**RECEIVING OFFICERS/SUPERVISOR'S COMMENTS**

BEFORE # INCIDENT HAPPENS

| SUPERVISOR'S NAME (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| | | | |

7400-012 (7421-084 Rev 1/99 PT)

DISTRIBUTION:
WHITE - DIVISION COMMANDER
YELLOW - INMATE FILE
PINK - INMATE

PAGE TWO OF THREE

## SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
### CORRECTIONAL SERVICES

| IN RE: INCIDENT REPORT NUMBER: 0957/17408 | INMATE GRIEVANCE/SUGGESTION | | |
|---|---|---|---|
| NAME (OR NAMES) (LAST, FIRST, M.I.) (PRINT) DEARMESTER, FRANK LEE | 7-12-73 | XREF NUMBER 1706059 | DATE 9-22-13 |
| INMATE SIGNATURE Frank Dearm | 3G48B | DATE AND TIME OF OCCURRENCE 9-22-13 11:00-10 | |

**INSTRUCTIONS:** PLEASE PRINT YOUR NAME ON THE FORM AS IT APPEARS ON YOUR WRIST AND AND INCLUDE YOUR XREF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION, PLEASE PLACE FULL NAMES AND XREF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

GRIEVANCE/SUGGESTION OF LUNGING AT ME WITH FISTS AND AN ANGRY FACE WAS THE AGGRESSOR. WHEN GIL ARRIVED TO THE INCIDENT, I HEARD HIM SAY MY NAME IN A REPRIMANDING TONE, THIS WAS BEFORE HE EVEN ASKED WHAT HAPPENED. I ALSO KNOW THAT INMATES' CELLS CAN BE SEARCHED ANYTIME AND WITHOUT REASON, BUT GIL DIDN'T CUFF MALIK OR THOMPSON OR GO THROUGH THEIR CELL. FOR ANY LITTLE THING TO CHARGE THEM WITH. THERE IS AN UNFAIR BIAS HERE.

CORPORAL GIL HAS GIVEN ME A HARD TIME IN THE PAST FOR GIVING SOME OF MY KOSHER ITEMS TO ORTEGA. BUT AS FOREMENTIONED, I'M IN A DIFFICULT SITUATION. I DON'T WANT A REGULAR TRAY, OR EVEN TWO REGULAR TRAYS. I DON'T EAT THAT.

COUNT 1 - ASSAULT - NOT GUILTY, I WAS DEFENDING + GOT JUMPED. SEE INJURIES

COUNT 2 - PROPERTY - 3 TRAYS FROM TRUSTEE LONG AGO. I CLEANED & USE AS CHAIR SO I CAN SEE THE TV - GUILTY

COUNT 3 - PLUMBING - TALK ON THE BOWL TO PLAY CHESS OCCASIONALLY, BUT EVERY BODY DOES. SOME EVEN "FISH" THIS IS PETTY, ESP. FOR BEAST - GUILTY

COUNT 4 - RUNNING A STORE - NO. I HAD THIS IDEA BUT NEVER IMPLEMENTED IT. IT WAS NEVER IN MY WINDOW - NOT GUILTY

COUNT 5 - CRIM. STAT. PC 243 - DON'T KNOW WHAT THIS IS - NOT GUILTY

COUNT 6 - CONTRABAND - IF THIS IS THE SHARPENED WASHER, I USED IT TO SHARPEN MY PENCILS FOR BECAUSE THE FLOOR'S PENCIL SHARPENER HAS BEEN BROKEN FOR OVER A YEAR, SEE GRIEVANCES, I HAVE A RIGHT TO LEGAL MAIL - NOT GUILTY

COUNT 7 - 1.3 OZ BAGS OF CARROTS THAT I DO EAT... CONTRABAND??! - NOT GUILTY + RIDICULOUS

FOR GIL TO FWD HIS INCORRECT + BIASED REPORT TO THE CHAPLAIN IS A BLATANT EFFORT TO DISQUALIFY ME FROM MY RELIGIOUS DIET. GIL'S EFFORTS ARE TANTAMOUNT TO ANTISEMITISM

| RECEIVING OFFICER (PRINT) Gil #602 | BADGE NO. | SIGNATURE Gil #602 | DATE/TIME 4/23/13 0958 |
|---|---|---|---|

RECEIVING OFFICER'S/SUPERVISOR'S COMMENTS:

| SUPERVISOR'S NAME (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|

SCD-012 (7421-084) Rev. 1/90 PT)

DISTRIBUTION:
WHITE - DIVISION COMMANDER
YELLOW - INMATE FILE
PINK - INMATE

PAGE THREE OF THREE

Case 2:13-cv-0___-DAD   Document 1   Filed 10/0__   Page 19 of 28

# SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL SERVICES

**102**

### REPLY TO INMATE GRIEVANCE/SUGGESTION

| PRIMARY INMATES NAME (LAST, FIRST, MIDDLE) | X-REF NUMBER | LOCATION | DATE |
|---|---|---|---|
| Dearwester, Frank | 1701654 | 9 East 102 | 05/22/2013 |

Mr. Dearwester based on the hearing I conducted with you I found you guilty and imposed 25 days restriction. You brought several issues up in your grievance to include being extorted by the inmate workers who you were involved in the confrontation with. However, these issues were never brought to the attention of the officer's prior to the incident. In the future you should bring to the attention any problems you might be having prior to incident like this happening.

In regards to a search of your cell, officers can conduct searches if they believe that you may have contraband. Several items of contraband were located in your cell. During your hearing you further stated that you were looking into running a store which is not allowed.

In regards to the inmate workers that you were involved in the confrontation with. Both inmates have been re-housed and are no longer assigned as workers in your pod based on there movement history screen. Hopefully you will have no other problems with the workers and if you do you should bring it to the attention of the floor officers.

As you say one of the inmates lunged at you in an aggressive manner prior to fight. That may have been the case but you still engaged in a physical confrontation with the inmate workers for which I found you guilty. You yourself stated in your grievance that you made several expletive statements to one of the workers which he may have seen as an act of aggression.

A good rule to follow while housed in the facility is to stay away from trouble and you will stay out of trouble.

| OFFICERS NAME (PRINT) | BADGE # | Facility and Signature |
|---|---|---|
| Sgt. M. Gregory | 150 | 5/23/13 |

7400-013A (7421-085 Rev 1/90 FT)

DISTRIBUTION:
WHITE-DIVISION COMMANDER
YELLOW-INMATE FILE
PINK-INMATE

# SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL SERVICES

### INMATE GRIEVANCE/SUGGESTION

| NAME (PRINT) LAST, FIRST, MIDDLE INIT. | DATE OF BIRTH | XREF NUMBER | DATE OF DESI |
|---|---|---|---|
| DEANWESTER, FRANK LEE | 07-12-72 | 170LL54 | 05/12/13 |

| INMATE SIGNATURE | HOUSING LOCATION | DATE AND TIME OF OCCURRANCE |
|---|---|---|
| | 85100 | 04/30/13 ONGOING |

INSTRUCTIONS: PLEASE PRINT YOUR NAME ON THE FORM AS IT APPEARS ON YOUR WRISTBAND AND INCLUDE YOUR XREF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION, PLEASE PLACE FULL NAMES AND XREF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

GRIEVANCE/SUGGESTION CHAPLAIN DAVID CLEMENTS MET WITH ME AND FULLY UNDERSTOOD MY RELIGIOUS NEEDS SUMMARIZED IN MY 04/06/12 GRIEVANCE. THAT FORM MET WITH HIS APPROVAL OF MY KOSHER DIET.

A YEAR LATER ON APRIL 05, 2013 THE BEAST INMATE WORKERS WERE ATTEMPTING TO EXTORT ME OF MY KOSHER DIET. ON APRIL 21, 2013 TWO OF THEM ASSAULTED ME FOR MY REFUSALS. I WAS THE ONLY ONE TO (1) RECEIVE INJURIES (2) BE HANDCUFFED, (3) HAVE MY CELL SEARCHED (4) RECEIVE A WRITE UP, AND (5) RECEIVE 25 DAYS OF CONFINEMENT.

CORPORAL GIL'S WRITE-UP WAS CARBON COPIED TO THE CHAPLAIN'S OFFICE. THIS WAS AN UNORTHODOX MOVE BY THIS FLOOR OFFICER WHO HAD PERSECUTED ME PREVIOUSLY ABOUT MY RELIGIOUS BELIEFS. HE WOULD SARCASTICALLY ANNOUNCE TO OTHER INMATES AND OFFICERS THAT I THOUGHT I WAS "SPECIAL".

THE CURRENT CHAPLAIN SPOKE TO ME ON APRIL 30, 2013. HE WAS CONDESCENDING AND BIASED. HE REFUSED TO LISTEN TO ANY EXPLANATION FOR THE WRITE-UP. HE TOLD ME THAT THE KOSHER DIET IS VERY EXPENSIVE; IMPLYING THAT I AM UNWORTHY TO PARTAKE THEREOF. HE THEN ATTEMPTED TO CONFIRM ME TO JUDAISM. THIS WAS HIS EFFORT TO JUSTIFY HIS NEXT STEP, WHICH WAS TO DISQUALIFY ME FROM THE KOSHER DIET.

THE INMATE WORKERS, THE HARASSING FLOOR OFFICER, THE NEW CHAPLAIN, AND THE JUDAIC FAITH ARE ALL IRRELEVANT REGARDING MY RIGHT TO THE KOSHER DIET. I "QUALIFIED" FOR OVER A YEAR AND NOW DUE TO BUDGET CONSTRAINTS AND OR RELIGIOUS PERSECUTION, THE SACRAMENTO COUNTY MAIN JAIL HAS FALLEN OUT OF COMPLIANCE WITH MY RIGHT TO BE FREE FROM THE PROHIBITION OF FREE EXERCISE OF RELIGION AND TO EQUAL PROTECTION OF THE LAWS. (U.S.C.A. AMEND. 1,14) PLEASE RESTORE MY ASSIGNMENT TO THE KOSHER DIET OR REPLY STATING THAT MY ADMINISTRATIVE REMEDY PROCESS IS EXHAUSTED.

| RECEIVING OFFICER (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| R. Hman | 267 | | 5-12-13 1040 |

RECEIVING OFFICER'S SUPERVISOR'S COMMENTS:

| SUPERVISOR'S NAME (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| SGT. E. JOS | 18 | | 5-12-0 1400 |

7400-012 (742) 1084 Rev.1/90 PID:

DISTRIBUTION
WHITE – DIVISION COMMANDER
YELLOW – INMATE FILE
PINK – INMATE

PAGE 1 OF 2

Case 2:13-cv-0____-DAD   Document 1   Filed 10/04___   Page 21 of 28

## SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL SERVICES

### REPLY TO INMATE GRIEVANCE/SUGGESTION

| PRIMARY INMATES NAME (LAST, FIRST, MIDDLE) | X-REF NUMBER | LOCATION | DATE |
|---|---|---|---|
| Dearwester, Frank | 1701654 | 8E102 | 5/12/13 |

**PROBLEM:** Sgt. Yee #18, reviewed your grievance dated 05-12-13. In your grievance, you would like to have your Kosher Diet restored.

**INVESTIGATION:** I spoke with Chaplain Toliver regarding your religious status. Chaplain Toliver felt you lacked sincerity in the Jewish faith. Per Chaplain Toliver, you indicated you have not totally decided to become a follower of the Jewish faith.

On 04/21/13, you were involved in an incident involving multiple facility violations, which included running a store and possessing contraband (excess food storage). The report indicates during a search of your cell, deputies found the following items:

- 3 food trays (used exclusively for mainline meals)
- A "store wanted/4 sale sheet" listing to sell plain bagels, English muffin, whole bell peppers, whole tomatoes, and whole bananas. These items are only available through the Kosher trays.
- 33 bags of carrots only available through the Kosher trays.

After reviewing the totality of the circumstances, Chaplain Toliver recommended you be removed from the religious meal list due to lack of religious sincerity.

**FINDINGS:** Based on Department Operations Orders, staff shall attempt to accommodate an inmate's religious request if the inmate's religious belief appears sincere. Based on the Chaplain Toliver's findings and your recent actions, which included receiving mainline food trays and possessing Kosher food items for sale, it is my belief you have manipulated the system by receiving the mainline trays while storing your Kosher items to sell. Per the Chaplain and through his religious resources, people of the Jewish faith would not eat any non-kosher items. Due to lack of religious sincerity, at this point I am denying your request to have your Kosher meal restored.

| OFFICERS NAME (PRINT) | BADGE # | Facility commander's approval | |
|---|---|---|---|
| Sgt. E. Yee | 18 | | 5/16/13 |

7400-013A (7421-085 Rev 1/90 PT)

DISTRIBUTION:
WHITE-DIVISION COMMANDER
YELLOW-INMATE

# SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL SERVICES

### INMATE GRIEVANCE/SUGGESTION

APPEAL TO
FACILITY
COMMANDER

| NAME (PRINT) LAST, FIRST, MIDDLE | DATE OF BIRTH | XREF NUMBER | |
|---|---|---|---|
| CLEARWATER, FRANK E. | 07/03/1973 | 201654 | 05/17/13 |

| BOOKING NUMBER | INMATE LOCATION | DATE AND TIME OF OCCURRENCE |
|---|---|---|
| | 8EAST3 | 05/17/2013 AM |

INSTRUCTIONS: PLEASE PRINT YOUR NAME ON THE FORM AS IT APPEARS ON YOUR WRISTBAND, AND INCLUDE YOUR XREF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION, PLEASE PLACE FULL NAMES AND XREF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

GRIEVANCE/SUGGESTION: CHAPLAIN TOLIVER ASKED ME QUESTIONS ABOUT JUDAISM THAT WERE FAR MORE ADVANCED
THAN THOSE ASKED BY CHAPLAIN CLEMENTS. I WAS STILL ABLE TO ANSWER THE MAJORITY OF THEM CORRECTLY, EVEN THOUGH
SCSD HASN'T PROVIDED ME ANY FAITH SPECIFIC SERVICES. I EXPRESSED INTEREST IN STUDYING JUDAISM WHEN CHAPLAIN
CLEMENTS INQUIRED. A RABBI WOULD BE SENT TO SEE ME AS SHE WAS HIRED, HOWEVER, MY ORIGINAL
GRIEVANCE WAS THOROUGHLY CLEAR ABOUT MY FAITH AND MERIT FOR THE KOSHER DIET. CHAPLAIN CLEMENTS APPROVED
MY PARTAKING OF THE KOSHER DIET BASED ON THAT SUMMARY OF OUR MEETING. THAT FAITH REMAINS CONSISTENT
AND PIOUS TO THIS THE ENSUING 3RD DAY.

I DIDN'T EAT ANY NON-KOSHER FOODS, AND I DONE SO. I LIKELY WOULD HAVE BEEN CAUGHT DURING ANY OF THESE
ALLEGED "MEAL PARITIES" LIKE GII, ARE EXCEEDINGLY JEALOUS IN THEIR PERSECUTION EFFORTS AS INDICATED BY THE
REPORT OF THE 01/05/13 INCIDENT WITH CURRENTLY DEMONSTRATED OCCS TO THE CHAPLAIN'S OFFICE.
I NEVER RAN A STORE. I HAD THE IDEA OF TRADING SOME KOSHER DIET FOODS FOR KOSHER COMMISSARY FOODS.
BUT THE GIST THAT I WOULD HAVE TAKEN WITH VARIOUS. I TRIED TO TRADE IT TO THE WING AND FOREGO ABOUT
IT. HAD I PUT IT IN MY WINDOW, THESE AFOREMENTIONED DEPUTIES WOULD UNDOUBTEDLY WRITTEN ME UP AS
THEY "EAT TO THE SECTE" THIS DURING ANY OF THEIR 9.95¢ HOURLY ROUNDS. THIS CHAPLAIN TOLIVER ALL OF
THIS AND HE REPRIMANDED ME FOR EVEN THINKING OF IT.
CHAPLAIN TOLIVER NEVER ASKED ABOUT THE FOOT TRAYS. IF HE HAD BEEN RECEPTIVE TO ANY EXPLANATION FROM ME WHAT-
SOEVER, HE WOULD HAVE LEARNED THAT I HAD OBTAINED THE 5 EMPTY TRANS LONGS AGO. I WASHED AND DRIED THEM
AND USED THEM AS A CHAIR FROM WHICH TO SEE THE TV THROUGH MY WINDOW.
AS TO THE "CONTRABAND" CARROTS, I HAVE A FEW CONTENTIONS:
(1) KOSHER DIETS CONTAIN 10.4 02-15 OZ OF CARROTS EVERY SINGLE DAY. AFTER DUTIFULLY CONSUMING AN FIRST
25 LBS (400 OZS) OF CARROTS, I OCCASIONALLY WOULD FALL BEHIND. REALLY, IT SEEMS RATHER INSENSITIVE
OF WHOEVER IS IN CHARGE OF PLANNING THE MENUS TO "PROVIDE A VARIETY OF FOODS, THUS PREVENTING
REPETITIVE ITEMS" (PC §6030, TITLE 15 §3342) BECAUSE A POUND OF CARROTS EVERY DAY IS NOT A VARIETY.

| RECEIVING OFFICER (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| R. DRUMMOND | #2528 | PDrummond | 5/18/13  19.35 |

RECEIVING OFFICER'S/SUPERVISOR'S COMMENTS:

FORWARDED TO SGT. YEE  5/18/13

| SUPERVISOR'S NAME (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| | | | |

7400-012 (7421-084) Rev 1/80 (PT)

DISTRIBUTION:
WHITE - DIVISION COMMANDER
YELLOW - INMATE FILE
PINK - INMATE

PAGE ONE OF THREE

# SACRAMENTO COUNTY SHERIFF'S DEPARTMENT

## CORRECTIONAL SERVICES

APPEAL TO FACILITY COMMANDER

## INMATE GRIEVANCE/SUGGESTION

| NAME (PRINT) LAST, FIRST, MIDDLE | DATE OF BIRTH | XREF NUMBER | DATE |
|---|---|---|---|
| [illegible], FRANK LEE | 07/12/1970 | 1701651 | 09/12/13 |
| INMATE'S SIGNATURE | INMATE'S LOCATION | DATE AND TIME OF OCCURRANCE | |
| [signature] | [illegible] | 09/11/2013 AM | |

*INSTRUCTIONS:* PLEASE PRINT YOUR NAME ON THE FORM AS IT APPEARS ON YOUR WRISTBAND AND INCLUDE YOUR XREF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION, PLEASE PLACE FULL NAMES AND XREF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

GRIEVANCE/SUGGESTION: A POUND OF CARROTS PER DAY SHOULD BE CONSIDERED PERSECUTION ON ITS OWN. THE NON-RELIGIOUS DIETS DON'T INCLUDE THIS MONOTONY.

(2) I HAVE GRIEVED IN THE PAST ABOUT THE FOOD VOLUME DISPARITY OF THE KOSHER DIET VS REGULAR DIET. I HAVE HELD THAT REGARDING THE REGULAR DIET, IN THE FACILITY'S TARGETING THE MINIMUM NEEDS OF THE "AVERAGE" INMATE, THAT INHERENTLY THE FACILITY IS FAILING TO MEET THE NEEDS OF 49.9% OF THE POPULATION. THIS IS AMPLIFIED WITH THE KOSHER DIETS BECAUSE SINCE THE KOSHER FOODS ARE MORE EXPENSIVE OR FOR WHATEVER REASON, THE FOOD VOLUME OF THE KOSHER DIET IS LESS THAN THE REGULAR DIET. THE REGULAR DIET IS SAID TO BE "PROVIDING ONLY THE MINIMUM SERVINGS OUTLINED... IS NOT SUFFICIENT TO MEET THE INMATES' CALORIC REQUIREMENTS" (TITLE 15 § 1241). INDIGENT KOSHER DIET RECIPIENTS ARE IN PERPETUAL HUNGER. THIS FACT RENDERS A "STORE" OR TRADE TO INCREASE FOOD UNPUNISHABLE ANYWAY.

(3) I AM FAMILIAR WITH THE "MEALS/FRUITS MUST BE EATEN AT SPECIFIED MEAL TIMES OR BE DISCARDED... SHALL NOT BE STORED IN YOUR CELL" (SCSD INMATE HANDBOOK § IX.C.2(c), P.33). HOWEVER, I WOULD ARGUE THAT:

(a) FOR THE REASONS IN (2), IT IS VERY DIFFICULT TO EAT 4-6 1.8OZ PACKAGES OF RAW CARROTS WITHIN THE ALLOTED 15-MINUTE DESIGNATED EATING PERIOD; AND

(b) THE SPIRIT OF THE RULE IS TO PREVENT THOSE WHO HORDE FRUIT TO MAKE PRUNO/WINE AND TO PREVENT FOOD ROT AND ITS INHERENT PEST/HEALTH ISSUES. MY CARROTS WOULDN'T MAKE VERY GOOD PRUNO, I'M GUESSING. THE SEALED 1.8OZ PACKAGES IN WHICH THE CARROTS COME, ARE IMPRINTED WITH EXPIRATION DATES ALWAYS AT LEAST TWO WEEKS AWAY. I WAS RUNNING APPROXIMATELY 3 DAYS BEHIND. THERE WAS NO RISK OF ROT. I MAINTAIN A CLEAN CELL.

I DO APPRECIATE THE METHODICAL AND PROFESSIONAL APPROACH OF SGT YEE'S 09/12/13 REPLY, EVEN THOUGH IT INCORRECTLY ASSESSED MY RELIGIOUS SINCERITY AND ACCUSED ME OF MANIPULATING THE SYSTEM. CHAPLAIN TOLIVER DID NOT READ THE GRIEVANCE THAT I SUBMITTED IN RE: THE 09/05/13 INCIDENT AND HE

| RECEIVING OFFICER (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| R. DRUMMOND | #2560 | [signature] | 5/18/13 1925 |

RECEIVING OFFICER'S/SUPERVISOR'S COMMENTS:

FORWARDED TO SGT. YEE. 5/18/13

| SUPERVISOR'S NAME (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| | | | |

7400-012 (7421-084 Rev 1/90 PT)

DISTRIBUTION:
WHITE - DIVISION COMMANDER
YELLOW - INMATE FILE
PINK - INMATE

PAGE TWO OF THREE

# SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL SERVICES

APPEAL TO
FACILITY
COMMANDER

### INMATE GRIEVANCE/SUGGESTION

| NAME (PRINT) LAST, FIRST, MIDDLE | DATE OF BIRTH | XREF NUMBER | |
|---|---|---|---|
| | | | CSI 181 |
| INMATE SIGNATURE | CLASSIFICATION (PF) | DATE AND TIME OF OCCURRENCE | |
| | | 5/8/13 3:03 AM | |

INSTRUCTIONS: PLEASE PRINT YOUR NAME ON THE FORM AS IT APPEARS ON YOUR WRIST BAND AND INCLUDE YOUR XREF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION, PLEASE PLACE FULL NAMES AND XREF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

GRIEVANCE/SUGGESTION: Refused to deal with _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

PERSECUTION OF THIS CITIZEN. PROPOSED ADMINISTRATIVE REMEDY:

1) RESTORE MY ASSIGNMENT TO THE KOSHER DIET; AND

2) RENDER IT SELF-REVOKABLE ONLY (AS THE CONSTITUTION GIVES ME CONTROL OF MY RELIGION); AND

3) CREDIT MY INMATE ACCOUNT WITH A TOKEN $100.00 PER-DAY OF IT'S DEPRIVAL SINCE 04/30/13;

OR

4) REPLY WITH A COPY OF OR SPECIFIC CITATIONS + QUOTES OF THE RELEVANT "DEPARTMENT OPERATIONS ORDERS"; AND

5) A DENIAL OF THIS APPEAL WITH A STATEMENT OF "ADMINISTRATIVE REMEDIES THAT ARE AVAILABLE ARE EXHAUSTED" SO THAT WE MAY PROCEED WITH LITIGATION FORTHWITH.

///

| RECEIVING OFFICER (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| R. DRUMMOND | 825 | | 5/8/13 19:25 |

RECEIVING OFFICER'S/SUPERVISOR'S COMMENTS:

FORWARDED TO SGT and DATE FYE B 1/18 5/12/13

| SUPERVISOR'S NAME (PRINT) | BADGE NO. | SIGNATURE | DATE/TIME |
|---|---|---|---|
| | | | |

7400-012 (7421-084 Rev 1/00 RT)

DISTRIBUTION:
WHITE - DIVISION COMMANDER
YELLOW - INMATE FILE
PINK - INMATE

PAGE THREE OF THREE

**102**

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT

COUNTY JAIL
MESSAGE REQUEST

DATE 5/28/13

TO: Dearwater Frank

☐ FEDERAL PUBLIC DEFENDER   ☐ PUBLIC DEFENDER   ☐ PROBATION
☐ U.S. MARSHAL   ☐ SOCIAL WORKER   ☐ FLOOR OFFICER   ☐ JAIL ADMIN. RECORDS   ☐ CHAPLAIN   ☐ RCCC

RECEIVED BY OFFICER:   DATE:   TIME:

MESSAGE:

FROM NAME:   X-REF NO. 1701654   LOCATION 8C-102

I have scheduled a meeting with a Rabbi to meet with you on Wed June 5th @ 1030 am.

Chaplain

---

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT

COUNTY JAIL
MESSAGE REQUEST

DATE 6/3/13

TO: Dearwater Frank

☐ FEDERAL PUBLIC DEFENDER   ☐ PUBLIC DEFENDER   ☑ PROBATION
☐ U.S. MARSHAL   ☐ SOCIAL WORKER   ☐ FLOOR OFFICER   ☐ JAIL ADMIN. RECORDS   ☑ CHAPLAIN   ☐ RCCC

RECEIVED BY OFFICER:   DATE:   TIME:

MESSAGE:
Frank
The meeting with the Rabbi has been scheduled for Thursday am between 0800 - 0900 hrs

FROM NAME:   X-REF NO. 1701657   LOCATION 8107

REPLY

CHAPLAIN BROUGHT RABBI 06/13/13

Chaplain

MJ 7421 FORM 022
REV 11/08

WHITE COPY FOR REPLY – YELLOW COPY TO RECORDS – PINK COPY KEPT BY INMATE

**MFR**

Date: June 14, 2013

RE: Inmate Frank Dearwester, XREF: 1701654

I, Terry Toliver, Director of Chaplains, along with Rabbi David Weschler-Azen met with Inmate Dearwester to evaluate his claim that he is a practicing Jew and should be granted a kosher meal in accordance with Jewish law.

Rabbi David interviewed Mr. Dearwester; he asked him several questions in an attempt to glean if he is sincere in his following of the Jewish faith and traditions.

Rabbi David asked of Mr. Dearwester if he has received any formal training or education in the Jewish faith. Mr. Dearwester said no.

Rabbi David asked Mr. Dearwester when did he convert to Judaism, Mr. Dearwester claimed that he asked for information from Mr. David Clements, the former Director of Chaplains, but had no follow up on the request and no information had been give.

Rabbi David also inquired of the family religious history, i.e., was it Jewish? Mr. Dearwester said no. In further discussion Mr. Dearwester said he still follows Christian tradition and beliefs. Adherents of the Jewish faith do not follow "Christian traditions".

Based on the interview Rabbi David and Mr. Dearwester's own statement that "he continues to consider himself Christian", Rabbi David has determined there is no possible way he can be considered Jewish and in need of kosher meals.

## SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
### CORRECTIONAL SERVICES

### REPLY TO INMATE GRIEVANCE/SUGGESTION



| PRIMARY INMATES NAME (LAST, FIRST, MIDDLE) | X-REF NUMBER | LOCATION | DATE |
|---|---|---|---|
| Dearwester, Frank | 1701654 | 102 | 05/17/13 |

Facility Commander Review of Inmate Appeal: Kosher Diet

On May 12, 2013 Sergeant Yee replied to your grievance; pertaining to your removal from Special Religious Diet - Kosher.

Sergeant Yee noted the facts related to Incident Report 0957187608 which notes you were in possession of regular diet food trays and indicia of selling "Kosher" diet food items. In addition, the report stipulates you were involved in an altercation with inmates pod workers. The report includes statements from the workers that the altercation stemmed from your harassment to gain regular diet food trays in addition to your Kosher Diet tray.

Further investigation to the request and continuance of a Kosher diet was initiated with the assistance of Chaplain Terry Tolliver and Rabbi David Weischer-Azen to inquire into the sincerity of your professed religiosity. During this discussion you stated you follow traditions and beliefs of Christianity

The decision to deny your request for a Kosher meal has been examined in a thoughtful manner, and serves a compelling interest toward the security and maintenance of discipline within the facility. While the suspension of the Kosher meal meets those needs , it is the least restrictive option .You are still afforded means to explore your interests in religious material and services by submitting requests to the Jail Chaplain.

| OFFICERS NAME (PRINT) | BADGE # | Facility commander's approval |
|---|---|---|
| Lt. P. Massa | 10 | |

2400-J -3A (7421-060 Rev.1/00 PT)

DISTRIBUTION:
WHITE-DIVISION COMMANDER
YELLOW-INMATE FILE
PINK-INMATE

# SACRAMENTO COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL SERVICES
### INMATE GRIEVANCE / SUGGESTION

**INSTRUCTIONS:** PLEASE PRINT YOUR NAME AS IT APPEARS ON YOUR WRISTBAND AND INCLUDE YOUR X-REF NUMBER. IF MORE THAN ONE PERSON IS SIGNING THE GRIEVANCE/SUGGESTION, PLEASE PLACE FULL NAMES AND X-REF NUMBERS AT THE END OF THE FORM. USE A SECOND FORM IF MORE SPACE IS NEEDED.

**GRIEVANCE/SUGGESTION:** I HAD WRITTEN A 3 PAGE GRIEVANCE TO CHAPLAIN TOLLIVER ON 05/11/13 THIS WAS IN REGARD TO HIS CANCELATION OF MY ASSIGNMENT TO PARTAKE OF THE KOSHER/RELIGIOUS DIET. I HAVE YET TO RECEIVE A REPLY. CHAPLAIN CLEMENTS AUTHORIZED THE DIET ON 04/06/13. IT WAS CLEARLY APPROVED ON GROUNDS OF CHRISTIANITY (ROMANS 14:15-23) AND NOT ISLAMIC SO JUDAIC. CHAPLAIN TOLLIVER HAS EXPRESSED THAT HE HAD READ SAID APPROVAL. YET SINCE REPLACING CLEMENTS TOLLIVER DISQUALIFIED ME FOR "LACKED SINCERITY IN THE JEWISH FAITH." I AM CHRISTIAN. I HAVE SAID THIS ALL ALONG. REGARDLESS OF THIS, TOLLIVER BROUGHT A RABBI TO MY CELL ON JUNE 15, 2013, WHO ALSO AMAZINGLY FOUND ME TO BE A CHRISTIAN. I WAS GETTING THE RELIGIOUS DIET FOR A YEAR (04/06/12-05/17/13) AS A CHRISTIAN. TOLLIVER MENTIONED THE PRICE OF THE DIET AS WELL. THAT REALLY SHOULD BE IRRELEVANT. SOMETHING WIERD IS GOING ON AND I'M GOING TO CALL IT RELIGIOUS DISCRIMINATION DUE TO ELEMENTS OF MALICE. I'M READY FOR FEDERAL LITIGATION BUT I'LL RESTATE MY PROPOSED ADMINISTRATIVE REMEDY.

1) RESTORE MY ASSIGNMENT TO THE RELIGIOUS DIET

2) RENDER IT SELF-REVOKABLE ONLY (AS THE CONSTITUTION GIVES ME CONTROL OF MY RELIGION)

3) CREDIT MY INMATE ACCOUNT WITH $100.00 PER-DAY REMEDY FOR DEPRIVAL SINCE 04/30/13

   OR

4) REPLY WITH RELEVANT "DEPARTMENT OPERATIONS ORDERS"

5) DENY THIS APPEAL STATING "ADMINISTRATIVE REMEDIES AS ARE AVAILABLE" ARE EXHAUSTED" SO THAT WE MAY PROCEED WITH LITIGATION FORTHWITH.

U.S.C.A. AMEND. I; CAL CONST. ART. 1 §§ 1, 4, 17

**RECEIVING OFFICER (PRINT):**  _____  **BADGE NO.:**  _____  **SIGNATURE:**  _____  **DATE/TIME:**  _____

**RECEIVING OFFICER/SUPERVISOR'S COMMENTS:**

RECIEVED JUNE 19, 2013. I HOPED RESPONSE FROM J.T.P. WAS A. AFTER HAVING DENIED THIS APPEAL AS SUCH, THIS GRIEVANCE WILL SURELY BE IGNORED. THEY SEEM NOT GOING TO MAKE THE STATEMENT REQUESTED IN 5 ABOVE.

**SUPERVISOR'S NAME (PRINT):**  _____  **BADGE NO.:**  _____  **SIGNATURE:**  _____  **DATE/TIME:**  _____

DISTRIBUTION:
DIVISION COMMANDER
BELOW - INMATE FILE
PINK - INMATE

PAGE 1 OF

**EXHIBIT B**

01 | Frank Lee Dearwester
P.O.Box 8800, AP9119
02 | CORCORAN, CA   93212

03 | Plaintiff in pro per,

**RECEIVED**

04 |

DEC 1 1 2015

05 |

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

06 |

BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT

07 | EASTERN DISTRICT OF CALIFORNIA

08 | FRANK LEE DEARWESTER,               Case No.:2:13-CV-02064-MCE-KJN(TEMP)
              Plaintiff,
09 |        vs.                          RESPONSE TO DEFENDANT'S REQUEST
                                         FOR ADMISSIONS, SET ONE
SACRAMENTO COUNTY SHERIFF'S
10 | DEPARTMENT,
              Defendants.               Complaint Filed: 10/14/13

11 |

12 | PROPOUNDING PARTIES:   Defendant COUNTY OF SACRAMENTO (erroneously sued as
                          SACRAMENTO COUNTY SHERIFF'S DEPARTMENT)
13 |

14 | RESPONDING PARTY:   Plaintiff FRANK LEE DEARWESTER

15 | SET NUMBER:         One

16 | //

17 | //

18 | //

19 | //

20 | //

21 | //

22 | //

23 | //

24 | //

25 | //

26 | //

27 | //

28 | //

01  RESPONSES TO REQUESTS FOR ADMISSION, SET ONE

02  RESPONSE TO REQUEST FOR ADMISSION NO.1:

03  Plaintiff admits that he entered Sacramento County's "Branch" facility on

04  May 4, 2011 and was transferred to Sacramento County Main Jail the following

05  day, May 5, 2011.

06  RESPONSE TO REQUEST FOR ADMISSION NO.2:

07  Plaintiff admits that he was released from Sacramento County Main Jail on

08  July 30, 2013.

09  RESPONSE TO REQUEST FOR ADMISSION NO.3:

10  Plaintiff objects to the "true and correct copy of the Notice of Revised

11  Mail Policy" portion of this request for admission, as the document originated

12  and/or was authored by defendant. The document does appear to be identical to

13  the document attached to plaintiff's Complaint, and was attached as Exhibit A.

14  RESPONSE TO REQUEST FOR ADMISSION NO.4:

15  Plaintiff objects to the "true and correct copy of the policy" portion of this

16  request for admission, as the document originated and/or was authored by

17  defendant. Plaintiff objects to the wording of "entitled General Order 06/15-

18  Prison Correspondence (i.e. the "REVISED MAIL POLICY")." as arbitrary and

19  indistinguishable from the document addressed by REQUEST FOR ADMISSION NO.3.

20  RESPONSE TO REQUEST FOR ADMISSION NO.5:

21  Plaintiff lacks sufficient information or knowledge to enable him to answer

22  the effective date of defendants REVISED MAIL POLICY. The document "NOTICE-

23  REVISED MAIL POLICY" states on line one, "Effective February 10, 2013..."

24  is in contradiction to this REQUEST FOR ADMISSION date of March 10, 2013.

25  RESPONSE TO REQUEST FOR ADMISSION NO.6:

26  Plaintiff contends that the REVISED MAIL POLICY was not implemented to ensure

27  safety and security of Sacramento County jail facilities, inmates and staff,

28  but instead to save money and time in the processing of incoming mail.

01   As a general matter, "[p]rison walls do not form a barrier separating prison

02   inmates from the protections of the Constitution." Turner v. Safley, 482 US

03   78, 84; 107 S.Ct. 2254; 96 L.Ed. 2d 64 (1987). Yet a prison is a unique loca-

04   tion that has unique needs. "Running a prison is an inordinately difficult

05   undertaking that requires expertise, planning, and the commitment of resources

06   all of which are peculiarly within the province of the legislative and execut-

07   ive branches of federalism, the actions and policies of prison administrators

08   receive a level of deference. Accordingly, when prison regulations are

09   challenged, federal courts engage in the four-factor inquiry laid out in

10   Turner:

11       (1) whether the regulation is rationally related to a legitimate and

12   neutral governmental objective;

13       (2) whether there are alternative avenues that remain open to the

14   inmates to exercise the right;

15       (3) the impact that accomodating the asserted right will have on other

16   guards and prisoners, and on the allocation of prison resources; and

17       (4) whether the existence of easy and obvious alternatives indicates

18   that the regulation is an exaggerated response by prison officials. Prison

19   Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001)(citing Turner, 482 US

20   at 89-90).

21   "[P]risoners' Constitutional rights are subject to substantial limitations

22   and restrictions in order to allow prison officials to acheive legitimate

23   correctional goals and maintain institutional security." Morrison v. Hall,

24   261 F.3d 896; 2001 US App.LEXIS 18561 (2001)

25   "Presumably, the kind of information which is considered a threat to prison

26   security when contained in a letter poses the same threat when communicated

27   orally. Admittedly, the logic of appellants' argument is attractive. However,

28   censorship of prisoners' mail is, in some circumstances at least, entirely

01 | consistent with the rule that First Amendment rights must be protected by the

02 | least restrictive rule." <u>Procunier v. Martinez</u>, 416 US 396, 413-14; 94 S. Ct.

03 | 1800, 1811-12 (1974)

04 | Plaintiff has not been provided with any evidence nor statement whatsoever

05 | as to the reasoning behind defendants implementation of a "postcard-only

06 | mail policy, be the reason to "ensure the safety and security of Sacramento

07 | County jail facilities, inmates and staff" or otherwise. The answers to this

08 | REQUEST FOR ADMISSION would be better answered by defendant and should have

09 | been made prior to the infringement of plaintiff's First Amendment right to

10 | freedom of expression.

11 | RESPONSE TO REQUEST FOR ADMISSION NO.7:

12 | Plaintiff lacks sufficient information or knowledge to enable him to answer

13 | whether or not his legal mail was affected by the REVISED MAIL POLICY, as

14 | defendants were fully in control of all incoming and outgoing mail, seemingly

15 | without oversight. Certainly without the oversight of plaintiff. Plaintiff is

15 | not aware of any affected article(s) of legal mail that were affected by the

17 | REVISED MAIL POLICY.

13 | RESPONSE TO REQUEST FOR ADMISSION NO.8:

19 | Plaintiff lacks sufficient information or knowledge to enable him to answer

20 | whether or not his ability to send legal mail was affected by the REVISED

21 | MAIL POLICY during the time frame of March 2013 to June 2013 or during any

22 | other time periods as defendants were fully in control of all incoming and

23 | outgoing mail, seemingly without oversight. Certainly without the oversight

24 | of plaintiff. Plaintiff is not aware of any affected article(s) of legal

25 | mail that were affected.

26 | RESPONSE TO REQUEST FOR ADMISSION NO.9:

27 | Plaintiff lacks sufficient information or knowledge to enable him to answer

28 | whether or not his ability to receive legal mail was affected by the REVISED

01  MAIL POLICY during the time frame of March 2013 to June 2013 or during any

02  other time periods, as defendants were fully in control of all incoming and

03  outgoing mail, seemingly without oversight. Certainly without the oversight

04  of plaintiff. Plaintiff is not aware of any affected article(s) of legal mail

05  that were affected.

06  RESPONSE TO REQUEST FOR ADMISSION NO.10:

07  Plaintiff lacks sufficient information or knowledge to enable him to answer

08  whether or not "money orders were not affected by the REVISED MAIL POLICY" as

09  defendants were fully in control of all incoming and outgoing mail and of

10  inmate trust accounts (aka "books"). It appears that the document states that

11  money orders will not be affected by the policy, but defendant seemingly has

12  no oversight. Certainly without the oversight of plaintiff. Plaintiff is not

13  aware of any money orders that were sent to him, (mis)handled by defendant,

14  rejected, returned to sender, discarded by defendant or otherwise.

15  RESPONSE TO REQUEST FOR ADMISSION NO.11:

16  Plaintiff lacks sufficient information or knowledge to enable him to answer

17  whether or not his "ability to receive money orders was not affected by the

18  REVISED MAIL POLICY during the time frame of March 2013 to June 2013" or any

19  other time frame, as defendants were fully in control of all incoming and

20  outgoing mail and of inmate trust accounts (aka "books"). It appears that the

21  document states that money orders will not be affected by the policy, but

22  defendant seemingly has no oversight. Certainly without the oversight of

23  plaintiff. Plaintiff is not aware of any money orders that were sent to him,

24  (mis)handled by defendant, rejected, returned to sender, discarded by defendant

25  or otherwise.

26  RESPONSE TO REQUEST FOR ADMISSION NO.12:

27  Plaintiff lacks sufficient information or knowledge to enable him to answer

28  whether or not his "ability to receive cashier's checks was not affected by

01  the REVISED MAIL POLICY during the time frame of March 2013 to June 2013" or

02  any other time frame, as defendants were fully in control of ann incoming and

03  outgoing mail and of inmate trust accounts (aka "books"). It appears that the

04  document states that cashier's checks will not be affected by the policy, but

05  defendant seemingly has no oversight. Certainly without the oversight of

06  plaintiff. Plaintiff is not aware of any cashier's checks that were sent to

07  him, (mis)handled by defendant, rejected, returned to sender, discarded by

08  defendant or otherwise.

09  RESPONSE TO REQUEST FOR ADMISSION NO.13:

10  Plaintiff lacks sufficient information or knowledge to enable him to answer

11  whether or not "photographs sent via U.S. Mail to inmates were not affected

12  by the REVISED MAIL POLICY" as defendants were fully in control of all incoming

13  and outgoing mail. It appears that the document states that photographs will

14  be permitted by the policy, but defendant seemingly has no oversight. Certainly

15  without the oversight of plaintiff. Plaintiff is not aware of any photographs

15  that were sent to him, (mis)handled by defendant, rejected, returned to sender

17  discarded by defendant or otherwise. Plaintiff did not receive any photographs

18  during the policy time frame of February 2013 to June 2013, nor did defendants

19  deliver to plaintiff any notification of their having recieved photographs nor

20  of their disposition.

21  RESPONSE TO REQUEST FOR ADMISSION NO.14:

22  The REVISED MAIL POLICY states "Up to ten (10) photographs may be mailed to

23  the jail." Plaintiff lacks sufficient information or knowledge to enable him

24  to admit whether or not photographs were affected or not by defendants

25  REVISED MAIL POLICY, as defendants were fully in control of all incoming mail

26  and of whether or not to notify plaintiff of the disposition of any photo-

27  graphs that were received.

28  //

01  RESPONSE TO REQUEST FOR ADMISSION NO.15:

02  Plaintiff lacks sufficient information or knowledge to enable him to answer

03  whether or not his "ability to receive photographs was not affected by the

04  REVISED MAIL POLICY during the time frame of March 2013 to June 2013" or any

05  other time frame as defendants were fully in control of all incoming mail.

06  The REVISED MAIL POLICY document appears to state that photographs will not

07  be affected, but defendants compliance thereto is not within the scope of

08  plaintiff's knowledge. Plaintiff is not aware of any instance where his incom-

09  ing photographs were affected by the REVISED MAIL POLICY, however, plaintiff

10  did not receive any photographs during the policy time frame, nor did

11  defendants deliver any notification to plaintiff as to the disposition of any

12  photographs that might have been received by defendants.

13  RESPONSE TO REQUEST FOR ADMISSION NO.16:

14  Plaintiff lacks sufficient information or knowledge to enable him to answer

15  whether or not his "official correspondence from government agencies was not

16  affected by the REVISED MAIL POLICY" as defendants were fully in control of

17  all incoming mail. The policy document states "Official correspondence from

18  government agencies and business entities (organizations such as corporations,

19  limited liability companies, partnerships, charities, non-profits, trusts,

20  etc.) are allowed." However, there is no oversight other than by defendant

21  itself. Plaintiff experienced multiple instances where his official corresp-

22  ondences were opened and inspected as if they were non-official. Plaintiff

23  experienced multiple instances where his "return-to-sender" correspondences

24  from official/government agencies were opened and inspected outside of his

25  presence as if they were non-official. Plaintiff is not aware of any (mis)

26  handled official correspondences related to the policy by defendants, nor has

27  plaintiff received any of the required notification of any rejected, return-to-

28  sender, or other (mis)handling by defendant.

01 RESPONSE TO REQUEST FOR ADMISSION NO.17:

02 Plaintiff lacks sufficient information or knowledge to enable him to answer

03 whether or not his "ability to receive official correspondence from government

04 agencies was not affected by the REVISED MAIL POLICY during the time frame of

05 March 2013 to June 2013" or any other time frame as defendants were fully in

06 control of all incoming mail. The remainder of this response is asked and

07 answered in RESPONSE TO REQUEST FOR ADMISSION NO.16.

08 RESPONSE TO REQUEST FOR ADMISSION NO.18:

09 Plaintiff objects as this question is asked and answered in RESPONSE TO

10 REQUEST FOR ADMISSION NO.16 & 17.

11 RESPONSE TO REQUEST FOR ADMISSION NO.19:

12 Plaintiff objects as this question is asked and answered in RESPONSE TO

13 REQUEST FOR ADMISSION NO.16 & 17.

14 RESPONSE TO REQUEST FOR ADMISSION NO.20:

15 Plaintiff lacks sufficient information or knowledge to enable him to answer

16 whether or not "book subscriptions were not affected by the REVISED MAIL POLICY"

17 as defendants were fully in control of all incoming mail. The REVISED MAIL

18 POLICY document does state "Books, newspapers and magazine subscriptions are

19 not affected and will remain unchanged" but defendants mailroom appears to be

20 operating without oversight. Certainly without the oversight of plaintiff. For

21 this reason, plaintiff is unable to answer with any certainty whether or not

22 defendant (mis)handled his book subscriptions. Plaintiff is not aware of any

23 book subscriptions that were rejected or returned-to-sender or discarded by

24 defendant because it would be solely upon defendant to notify plaintiff of its

25 having done so. Plaintiff did have various books and other subscriptions

26 coming to him during the February 2013 to June 2013 time frame but due to the

27 nature of these senders, plaintiff is unable to determine which if any book(s)

28 subscription(s) were lost. Plaintiff also objects to this REQUEST FOR ADMISSION

01 on relevance. Plaintiff's Complaint was specific to the affect that the policy

02 of postcards-only incoming (regular) correspondence had on his First Amendment

03 rights. These lengthy lists of REQUESTS FOR ADMISSIONS are largely irrelevant,

04 repetative and harassing.

05 RESPONSE TO REQUEST FOR ADMISSION NO.21:

06 Plaintiff objects as this question is asked and answered in RESPONSE TO

07 REQUEST FOR ADMISSION NO.20.

08 RESPONSE TO REQUEST FOR ADMISSION NO.22:

09 Plaintiff objects as this question is asked and answered in RESPONSE TO

10 REQUEST FOR ADMISSION NO.20.

11 RESPONSE TO REQUEST FOR ADMISSION NO.23:

12 Plaintiff objects as this question is asked and answered in RESPONSE TO

13 REQUEST FOR ADMISSION NO.20.

14 RESPONSE TO REQUEST FOR ADMISSION NO.24:

15 Plaintiff objects as this question is asked and answered in RESPONSE TO

16 REQUEST FOR ADMISSION NO.20.

17 RESPONSE TO REQUEST FOR ADMISSION NO.25:

18 Plaintiff objects as this question is asked and answered in RESPONSE TO

19 REQUEST FOR ADMISSION NO.20.

20 RESPONSE TO REQUEST FOR ADMISSION NO.26:

21 Plaintiff admits that the policy document does appear to state "Inmates may

22 receive e-mail messages through the Inmate Email System." However, as

23 defendant was solely responsible for the actual delivery of any e-mail messages

24 and for their own oversight, plaintiff is unable to answer whether or not the

25 REVISED MAIL POLICY or any other barrier affected his ability to receive said

26 e-mail messages. The Inmate Email System approach to supplementing the new

27 postcards-only mail policy also presumes that the sender is computer literate,

28 Internet literate, posesses a computer with Internet access, and has received

01  For these and other reasons, many of which are already addressed in plaintiff's

02  Complaint, "access to a telephone" was insufficient to utilize as an altern-

03  ative to plaintiff's First Amendment rights.

04  RESPONSE TO REQUEST FOR ADMISSION NO.30:

05  Plaintiff objects as this request for admission is already answered in plain-

06  tiff's Complaint. Plaintiff lacks sufficient information or knowledge to

07  enable him to answer whether or not the "REVISED MAIL POLICY did not affect

08  telephone access." The policy document does not appear to address telephone

09  access. However, as the policy would effect to limit incoming correspondence,

10  it would be a safe presumption that it would increase the amount that inmates

11  access the phones, regardless of cost. Reasoning dictates that since defendants

12  make a profit from each call placed by their detainees, defendant's profits

13  would increase as a result of the REVISED MAIL POLICY. In this light, the

14  REVISED MAIL POLICY did indeed affect telephone access (and defendant profits).

15  RESPONSE TO REQUEST FOR ADMISSION NO.31:

16  Plaintiff admits that while he was detained at Sacramento County Main Jail,

17  in person visitation was permitted. Plaintiff objects that this question was

18  already answered, in greater detail, addressing the shortcomings of in-person

19  visitation and outlining why in-person visitation is not a viable alternative

20  to plaintiff's First Amendment protected correspondences, in plaintiff's

21  Complaint. Plaintiff further objects as these lengthy lists of REQUESTS FOR

22  ADMISSIONS are largely irrelevant, repetative and harassing.

23  RESPONSE TO REQUEST FOR ADMISSION NO.32:

24  Plaintiff objects as this request for admission is already asked and answered

25  in RESPONSE TO REQUEST FOR ADMISSION NO.31.

26  RESPONSE TO REQUEST FOR ADMISSION NO.33:

27  Plaintiff objects as this request for admission is already asked and answered

28  in RESPONSE TO REQUEST FOR ADMISSION NO.31.

01  a copy of the policy document. Further, plaintiff objects to this REQUEST FOR

02  ADMISSION for the reasons stated above and for relevance, as plaintiff's

03  Complaint already addressed/answered this request. These lengthy lists of

04  REQUESTS FOR ADMISSIONS are largely irrelevant, repetative and harassing.

05  RESPONSE TO REQUEST FOR ADMISSION NO.27:

06  Plaintiff admits that he was never permitted to send e-mail messages through

07  the Inmate E-mail System or otherwise, regardless of the implementation of the

08  REVISED MAIL POLICY. Plaintiff objects to this REQUEST FOR ADMISSION as

09  harassing. Had the writer of these requests intended anything other than

10  burdening this pro per plaintiff with irrelevant paperwork, they would know

11  that defendant-held detainees are not permitted to send e-mail·at all. This

12  question is indicative of the harassing nature of the whole REQUEST FOR

13  ADMISSIONS TO PLAINTIFF FRANK LEE DEARWESTER, SET ONE filing. It is harassing

14  and contemptible, not proper discovery, and plaintiff requests sanctions to

15  recompense his meager typing supplies, copying and mailing fees.

15  RESPONSE TO REQUEST FOR ADMISSION NO.28:

17  Plaintiff objects as this request for admission is already answered in plain-

13  tiff's Complaint. Further, the "alternative contact methods to reach friends

19  and family" were largely cost-prohibitive, amongst other shortcomings. Each

20  alternative had its own set of shortcomings. These were addressed in plaintiff's

21  Complaint.

22  RESPONSE TO REQUEST FOR ADMISSION NO.29

23  Plaintiff objects as this request for admission is already answered in plain-

24  tiff's Complaint. Plaintiff admits that while he had very limited access to

25  a telephone while he was detained at Sacramento County Main Jail, the access

26  was limited to an hour or less per day, usually occurred during sleeping hours,

27  and was extremely expensive. The phone system relied on the outside party's

28  financial resources and ability to deposit funds to a third-party account.

01  RESPONSE TO REQUEST FOR ADMISSION NO.34:

02  Plaintiff objects to REQUESTS FOR ADMISSION that essentially require him to

03  "admit" substance which is essentially the body of defendant's REVISED MAIL

04  POLICY. Further, plaintiff objects as these lengthy lists of REQUESTS FOR

05  ADMISSIONS are largely irrelevant, repetative and harassing.

06  RESPONSE TO REQUEST FOR ADMISSION NO.35:

07  Plaintiff objects as this request for admission is already asked and answered

08  in RESPONSE TO REQUEST FOR ADMISSION NO.34.

09  RESPONSE TO REQUEST FOR ADMISSION NO.36:

10  Plaintiff objects as this request for admission is already asked and answered

11  in RESPONSE TO REQUEST FOR ADMISSION NO.34.

12  RESPONSE TO REQUEST FOR ADMISSION NO.37:

13  Plaintiff lacks sufficient information or knowledge to enable him to answer

14  whether or not "the REVISED MAIL POLICY did not affect [his] ability to send

15  regular correspondence through an envelope" as defendants were fully in

16  control of all incoming and outgoing mail. Defendant's compliance with its

17  own policies, in a mailroom without [plaintiff's] oversight, is not within

18  the scope of plaintiff's knowledge.

19  RESPONSE TO REQUEST FOR ADMISSION NO.38:

20  Plaintiff did not receive adequate notice of the REVISED MAIL POLICY. Plaintiff

21  objects as this request for admission is already asked and answered in plaint-

22  iff's Complaint. Further, plaintiff objects as these lengthy lists of REQUESTS

23  FOR ADMISSIONS are largely irrelevant, repetative and harassing.

24  RESPONSE TO REQUEST FOR ADMISSION NO.39:

25  Plaintiff did not receive timely notice of the REVISED MAIL POLICY. Plaintiff

26  objects as this request for admission is already asked and answered in plaint-

27  iff's Complaint. Further, plaintiff objects as these lengthy lists of REQUESTS

28  FOR ADMISSIONS are largely irrelevant, repetative and harassing.

01 | RESPONSE TO REQUEST FOR ADMISSION NO.40:

02 | Plaintiff lacks sufficient information or knowledge to enable him to answer

03 | whether "the REVISED MAIL POLICY did not affect [his] ability to advise family

04 | of the REVISED MAIL POLICY." Plaintiff contends that there were other short-

05 | comings on defendant's part which aggravated the violation of his First

06 | Amendment rights. Plaintiff objects as this request for admission is already

07 | answered in plaintiff's Complaint.

08 | RESPONSE TO REQUEST FOR ADMISSION NO.41

09 | Plaintiff objects as this request for admission is already answered in RESP-

10 | ONSE TO REQUEST FOR ADMISSION NO.40, substituting the word "friends" for the

11 | word "family."

12 | RESPONSE TO REQUEST FOR ADMISSION NO.42:

13 | Plaintiff lacks sufficient information or knowledge to enable him to answer

14 | about the existence of any "30 day 'grace period' for implementation of the

15 | REVISED MAIL POLICY" for reasons stated in RESPONSE TO REQUEST FOR ADMISSION

15 | NO.38 & 39 and with the same objections.

17 | RESPONSE TO REQUEST FOR ADMISSION NO.43:

18 | Plaintiff lacks sufficient information or knowledge to enable him to answer

19 | whether "prior to implementation of the REVISED MAIL POLICY, [all of his]

20 | incoming personal mail was being stamped with the words 'POSTCARDS ONLY EFFEC-

21 | TIVE MARCH 10, 2013'" as defendants were fully in control of all incoming and

22 | outgoing mail. Defendant's compliance with its own policies, in a mailroom

23 | without [plaintiff's] oversight, is not within the scope of plaintiff's know-

24 | ledge. Plaintiff did receive at least one piece of incoming personal mail

25 | with the words "POSTCARDS ONLY EFFECTIVE MARCH 10, 2013" on or about February

26 | 19, 2013. However, plaintiff objects as this request for admission is already

27 | asked and answered in plaintiff's Complaint. Plaintiff objects as these lengthy

28 | lists of REQUESTS FOR ADMISSIONS are largely irrelevant, repetative and harassing.

01 RESPONSE TO REQUEST FOR ADMISSION NO.44:

02 Plaintiff lacks sufficient information or knowledge to enable him to answer

03 whether he "suffer[ed] any physical injury to [his] body as a result of the

04 REVISED MAIL POLICY" as plaintiff is not a physician. However, plaintiff did

05 adequately address multiple injurious events which stand alone and in unison

06 in plaintiff's Complaint. Some of these are: "C. Inmate Support Structure

07 Targeted - Facility notice states "other approved mail," "official correspon-

08 dence from government agencies and business entities... are allowed," and

09 "legal mail is not affected." This proffers that facility is targeting inmate's

10 friends and family as the class of persons affected by the facility action.

11 D. Facility action is an infringement of an inmate's right to maintain relat-

12 ionships with friends and family. An inmate is already inherently limited in

13 available contact methods; those being: in-person visitation, telephone,

14 sender-only email, and U.S. Postal mail..." (02/22/13 Grievance, p.2) and

15 "G. Miscarriage of Justice - Facility action is yet another mechanism being

16 placed which is designed to break down the pretrial inmate's support system,

17 reduce morale, instill fear/hopelessness and force the inmate to a plea agree-

18 ment which is skewed in the District Attorney's favor. It constitutes pretrial

19 detainee punishment for those inmates pending trial and cruel & unusual puni-

20 shment for all inmates." (Id.,p.6). Plaintiff objects to the implication that

21 physical injury is the only actionable injury. Constitutional violations are

22 deemed by the Supreme Court, 9th Circuit Court, and others, to be actionable

23 under and despite seeming contradictions in PLRA. Further, plaintiff objects

24 to this as prerequisite to the delving into his private medical and mental

25 health files. Plaintiff has suffered severe emotional trauma, depression,

26 feelings of helplessness and hopelessness, separation from his friends and

27 family in his deepest hour of need. All of these have very real physical

28 attributes. Anxiety and panic attacks, hair loss, dietary problems, heart

01 issues develop or worsen, insomnia, skin conditions, untimely aging, increased

02 risk of suicide, are all just a few of the symptoms experienced by plaintiff.

03 These several psychological injuries and their associated physical manifest-

04 ations should be recognized by the court, sparing plaintiff the further

05 embarassment of a public display of his innermost pains.

06 RESPONSE TO REQUEST FOR ADMISSION NO.45:

07 Plaintiff objects as this request for admission is already answered in RESP-

08 ONSE TO ADMISSION NO.44, substituting the words "emotional distress" for the

09 words "physical injury to YOUR body."

10 RESPONSE TO REQUEST FOR ADMISSION NO.46:

11 Plaintiff lacks sufficient information or knowledge to enable him to answer

12 whether "[he] did not incur any medical expenses as a result of the REVISED

13 MAIL POLICY" for the reasons listed in RESPONSE TO REQUEST FOR ADMISSION NO.

14 44 and because both defendants and CDCR have maintained the sole responsibility

15 of maintaining plaintiff's inmate trust accounts (aka "books") along with any

15 medical copay transactions levied against plaintiff's funds.

17 RESPONSE TO REQUEST FOR ADMISSION NO.47:

13 Plaintiff lacks sufficient information or knowledge to enable hime to answer

19 whether "[he] did not incur any other money damages or costs as a result of

20 the REVISED MAIL POLICY." A lot of time has passed since defendant enacted

21 the policy. Plaintiff has lost opportunities and entire relationships as a

22 result of the policy and the other pretrial detainee punishment regimen that

23 defendant had in place at Sacramento County Main Jail. Plaintiff lost the

24 opportunity to properly defend himself, establish witnesses in his favor,

25 track down evidence, etc. There are so many possible alternative outcomes

26 that plaintiff cannot possibly answer this request with any finality.

27 RESPONSE TO REQUEST FOR ADMISSION NO.48:

28 Plaintiff objects as this request for admission is already answered in RESPO-

01 NSE TO REQUEST FOR ADMISSION NO.44-47.

02 RESPONSE TO REQUEST FOR ADMISSION NO.49:

03 Plaintiff objects to this request for admission as already answered in RESP-

04 ONSE TO REQUEST FOR ADMISSION NO.44-48.

05 RESPONSE TO REQUEST FOR ADMISSION NO.50:

06 Plaintiff is no longer incarcerated at Sacramento County Main Jail.

07 RESPONSE TO REQUEST FOR ADMISSION NO.51:

08 Plaintiff lacks sufficient information or knowledge to enable him to answer

09 whether "no one outside of Sacramento County Main Jail attempted to send [him]

10 personal mail in a letter format, and that mail was returned as undeliverable,

11 during the time frame of during the time frame of [(sic)] March 2013 to June

12 2013" as defendants were fully in control of all incoming and outgoing mail,

13 with defendant's mailroom operating without oversight. Certainly without the

14 oversight of plaintiff. For this reason, plaintiff is unable to answer with

15 any certainty whether defendant mishandled, rejected, or returned-to-sender

16 any articles of mail that were intended for plaintiff. In addition, plaintiff

17 is unable to determine which of his friends or family attempted to write

18 letter(s) to him, but ceased their efforts because of defendant's REVISED

19 MAIL POLICY.

20 RESPONSE TO REQUEST FOR ADMISSION NO.52:

21 Plaintiff admits that the Notice of REVISED MAIL POLICY was NOT posted in any

22 of his housing units at Sacramento County Main Jail. Plaintiff objects that

23 this request for admission was already answered in plaintiff's Complaint.

24 Further, plaintiff objects that these lengthy lists of REQUESTS FOR ADMISSIONS

25 are largely irrelevant, repetative and harassing.

26 RESPONSE TO REQUEST FOR ADMISSION NO.53:

27 Plaintiff lacks sufficient information or knowledge to enable him to answer

28 whether or not "Sacramento County Main Jail provided inmates and the public

01 with a sixty (60) day notice before implementing the REVISED MAIL POLICY on

02 March 10, 2013." Plaintiff objects that as it relates to him specifically,

03 the request is asked and answered in RESPONSE TO REQUEST FOR ADMISSION NO.52

04 and within plaintiff's Complaint. Further, plaintiff objects that these

05 lengthy lists of REQUESTS FOR ADMISSIONS are largely irrelevant, repetative

06 and harassing.

07 RESPONSE TO REQUEST FOR ADMISSION NO.54:

08 Plaintiff lacks sufficient information or knowledge to enable him to answer

09 whether or not "Sacramento County Main Jail first began providing inmates with

10 notice of the REVISED MAIL POLICY on November 12, 2013." Plaintiff further

11 objects that the substance of the request is already answered in plaintiff's

12 Complaint.

13 RESPONSE TO REQUEST FOR ADMISSION NO.55:

14 Plaintiff lacks sufficient information or knowledge to enable him to answer

15 whether or not "Sacramento County Main Jail first began providing the public

15 with notice of the REVISED MAIL POLICY on November 10, 2013." Plaintiff further

17 objects that the substance of the request is already answered in plaintiff's

18 Complaint.

19 RESPONSE TO REQUEST FOR ADMISSION NO.56:

20 Plaintiff lacks sufficient information or knowledge to enable him to answer

21 and objects that the substance of the request is already answered in plaintiff's

22 Complaint.

23 RESPONSE TO REQUEST FOR ADMISSION NO.57:

24 Plaintiff lacks sufficient information or knowledge to enable him to answer

25 and objects that the substance of the request is already answered in plaintiff's

26 Complaint.

27 RESPONSE TO REQUEST FOR ADMISSION NO.58:

28 Plaintiff objects as this request has been answered by plaintiff's Complaint,

01  by RESPONSE TO REQUEST FOR ADMISSION NO.6 and is an issue for jury.

02  RESPONSE TO REQUEST FOR ADMISSION NO.59:

03  Plaintiff contends that defendant's imposition of a postcards-only / REVISED

04  MAIL POLICY was not implemented to achieve any legitimate correctional goal

05  and is an issue for jury. Plaintiff further objects that this request is

06  answered in plaintiff's Complaint and by REQUEST FOR ADMISSION NO.6.

07  RESPONSE TO REQUEST FOR ADMISSION NO.60:

08  Plaintiff admits that the rights of a pretrial detainee may be curtailed in

09  order to maintain prison security. Plaintiff objects that the same answers and

10  objections in RESPONSE TO REQUEST FOR ADMISSIONS NO.58 & 59 apply here.

11  RESPONSE TO REQUEST FOR ADMISSION NO.61:

12  Plaintiff contends and objects for reasons stated in RESPONSE TO REQUEST FOR

13  ADMISSIONS NO.58-60.

14  RESPONSE TO REQUEST FOR ADMISSION NO.62:

15  Plaintiff contends and objects for reasons stated in RESPONSE TO REQUEST FOR

15  ADMISSIONS NO.58-60.

17  RESPONSE TO REQUEST FOR ADMISSION NO.63:

18  Plaintiff contends and objects for reasons stated in RESPONSE TO REQUEST FOR

19  ADMISSIONS NO.58-60.

20  RESPONSE TO REQUEST FOR ADMISSION NO.64:

21  Plaintiff objects as this request is asked and answered in RESPONSE TO REQUEST

22  FOR ADMISSION NO.28, amongst other similar requests. Plaintiff further objects

23  that these lengthy lists of REQUESTS FOR ADMISSIONS are largely irrelevant,

24  repetative and harassing.

25  RESPONSE TO REQUEST FOR ADMISSION NO.65:

26  Plaintiff admits that upon his arrival to Sacramento County Main Jail, he was

27  NOT provided with an INMATE ORIENTATION HANDBOOK. In fact, it was several

28  months before plaintiff obtained an INMATE ORIENTATION HANDBOOK or Title 15

01 California Code of Regulations, or knew that he (plaintiff) had any rights at

02 all. None of these items were freely available to plaintiff or the other

03 pretrial detainees as they should have been and it took exceptional effort

04 by plaintiff to learn what his rights were, beyond rumor, and then to know

05 what to ask for from whom. This is status quo at Sacramento County Main Jail.

06 Defendant keeps their detainees ignorant of their rights on purpose and quite

07 successfully.

08 RESPONSE TO REQUEST FOR ADMISSION NO.66:

09 Plaintiff objects as this request is asked and answered in RESPONSE TO REQUEST

10 FOR ADMISSION NO.65.

11 RESPONSE TO REQUEST FOR ADMISSION NO.67:

12 Plaintiff lacks sufficient information or knowledge to enable him to answer

13 whether or not the "Inmate Orientation Handbook... attached hereto as Exhibit

14 C" is a "true and correct copy" as it differs in design and content from the

15 Inmate Orientation Handbook that plaintiff obtained from defendant while

16 plaintiff was incarcerated at Sacramento County Main Jail.

17 RESPONSE TO REQUEST FOR ADMISSION NO.68:

18 Plaintiff lacks sufficient information or knowledge to enable him to answer

19 as he has never seen Exhibit D as described, prior to its attachment.

20 RESPONSE TO REQUEST FOR ADMISSION NO.69:

21 Plaintiff lacks sufficient information or knowledge to enable him to answer

22 as he never received any such incoming mail rejection notice, nor did he

23 witness any other detainee receive same during any time fram in which plaintiff

24 was incarcerated by defendant.

25 RESPONSE TO REQUEST FOR ADMISSION NO.70:

26 Plaintiff objects as this request is already answered in RESPONSE TO REQUEST

27 FOR ADMISSION NO.69.

28 //

01 | I declare under penalty of perjury under the laws of the State of California

02 | that the foregoing is true and correct. Executed on December 06, 2015 in the

03 | County of Kings, Corcoran, CA.

04 |
Frank Lee Dearwester

05 | Plaintiff in pro per

06 | //

07 | //

08 | //

09 | //

10 | //

11 | //

12 | //

13 | //

14 | //

15 | //

16 | //

17 | //

18 | //

19 | //

20 | //

21 | //

22 | //

23 | //

24 | //

25 | //

26 | //

27 | //

28 | //

**EXHIBIT C**

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
Adam J. DeBow, SBN 305809
350 University Avenue, Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants,
CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

FRANK LEE DEARWESTER,

        Plaintiff,

vs.

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT; SHERIFF SCOTT JONES; CHAPLAIN TOLIVER; DEPUTY SHERIFF CORPORAL GIL; DOES 01-25,

        Defendants.

_____/

Case No.: 2:13-CV-02066-MCE-EFB P (TEMP)

**DECLARATION OF EDWARD YEE IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

**No hearing pursuant to Local Rule 230(l)**

Complaint Filed: 10/14/13

I, EDWARD YEE, declare as follows:

    1.    I am currently a Lieutenant at the Sacramento County Sheriff's Department.

    2.    I make this Declaration on my own personal knowledge. If called upon to do so, I could and would competently testify about the matters asserted herein.

    3.    I have worked as a Sergeant at the Sacramento County Main Jail from March 25, 2012 to November 3, 2013.

1

**DECLARATION OF EDWARD YEE IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

{01539896.DOCX}

4.  At that time my job duties included:  I reviewed Department Policy and procedures to ensure compliance with federal and state law, oversaw the MJ contract with the Immigration and Customs Agency, oversaw the religious and educational programs, and maintained staffing to include the hiring of professional staff.

5.  On April 30, 2013, after reviewing the incident report authored by Deputy Benjamin Gil on April 21, 2013, and upon the recommendation of Chaplain Terry Toliver, I approved the removal of Frank Lee Dearwester from the kosher diet program.

6.  On May 12, 2013, I reviewed a grievance by Frank Lee Dearwester in which he stated he would like to have his kosher diet restored.

7.  On May 16, 2013, I responded to the grievance by Frank Lee Dearwester indicating that based on the Chaplain's findings and Dearwester's recent action, I believed he was manipulating the system to receive additional non-kosher items and selling his kosher items.

8.  In responding to Dearwester's May 12, 2013, grievance I reviewed the incident report authored by Deputy Benjamin Gil.

9.  The incident report among other things stated that Dearwester possessed three mainline food trays, a "store wanted/4 sale sheet" listing kosher items, and had stored 33 bags of carrots in his cell.  The report also noted that Dearwester had been involved in an altercation with other inmates due to his requesting mainline food trays. Based on this information, I determined that Dearwester had violated multiple facility policies due to his placement on the kosher diet. Based on all these factors and his apparent lack of religious sincerity, I denied his request to restore his kosher meal.

10.  It is the policy of the Sacramento County Main Jail to not allow inmates to run stores, store contraband, or barter items. This practice creates a substantial security risk to other inmates, deputies, and other jail staff. Additionally, allowing inmates to take these actions without consequence effects the maintenance of discipline within the facility. Accordingly, preventing bartering, storing of contraband, and running a store within the facility serves the substantial penological interests of security and maintaining discipline within the facility.

---

**2**

**DECLARATION OF EDWARD YEE IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

{01539896.DOCX}

11.     On May 18, 2013, I was forwarded a grievance authored by Dearwester on May 17, 2013. This grievance was entitled appeal to facility commander.  As a result, this grievance was provided to Lt. Massa (then facility commander, now retired).

12.     In response to Dearwester's grievance, Lt. Phillip Massa determined that Dearwester's removal from the kosher meal plan served the compelling interests of security and maintenance of discipline within the facility.

13.     I have reviewed pages 20 and 21 of **Exhibit A** attached to the index of exhibits.  Pages 20 is a true and correct copy of the grievance I reviewed on May 16, 2013. Page 21 is a true and correct copy of the response I made on May 16, 2013 to the grievance filed by Dearwester on May 12, 2013.

14.     I have reviewed pages 22, 23, and 24 of **Exhibit A** attached to the index of exhibits. These pages are a true and correct copy of the grievance filed by Dearwester, which was forwarded to me on May 18, 2013, which I provided to the Facility Commander.

15.     I have reviewed page 28 of **Exhibit A** attached to the index of exhibits.  This page is a true and correct copy of the response by Lieutenant Phillip Massa to Dearwester's May 17, 2013, grievance.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed this _15_ day of April, 2016, at Sacramento, California.

By _H. E. Yee_

Lieutenant Ed Yee,
Declarant

---

**3**

**DECLARATION OF EDWARD YEE IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

{01539896.DOCX}

**EXHIBIT D**

**PORTER | SCOTT**

A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
Adam J. DeBow, SBN 305809
350 University Avenue, Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants,
CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK LEE DEARWESTER, | Case No.: 2:13-CV-02066-MCE-EFB P (TEMP) |
| Plaintiff, | **DECLARATION OF TERRY TOLIVER IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| vs. | |
| SACRAMENTO COUNTY SHERIFF'S DEPARTMENT; SHERIFF SCOTT JONES; CHAPLAIN TOLIVER; DEPUTY SHERIFF CORPORAL GIL; DOES 01-25, | |
| | **No hearing pursuant to Local Rule 230(l)** |
| Defendants. | Complaint Filed: 10/14/13 |

I, TERRY TOLIVER, declare as follows:

1.  I am the Chaplain at the Sacramento County Main Jail ("SCMJ").

2.  I make this Declaration on my own personal knowledge. If called upon to do so, I could and would competently testify about the matters asserted herein.

3.  I have been the Chaplain at SCMJ from November 2012 to the present.

4.  My job duties include: Overseeing the Religious programs within the Sacramento County Sheriff Correctional Facilities, advising the administration on religious issues and inmate

1

**DECLARATION OF TERRY TOLIVER IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

{01530005.DOCX}

1   religious rights, and meeting with inmates to ascertain a correct response to their religious requests

2   within established faith doctrines and established protocols.

3       5.      On May 1, 2012, former Chaplain David Clements recommend that Plaintiff be

4   authorized to receive kosher meals.

5       6.      On May 3, 2012, Plaintiff was approved for the kosher diet by (then) Sergeant Ed Yee

6   on the recommendation of Chaplain David Clements.

7       7.      On April 21, 2013, I received and reviewed an incident report drafted by Deputy

8   Benjamin Gil regarding Frank Lee Dearwester ("Dearwester").

9       8.      On April 30, 2013, I visited Dearwester to inquire about his sincerity in requesting a

10  kosher diet.

11      9.      During this meeting I explained to Dearwester that the "for sale" list of kosher foods

12  found in his cell demonstrated a lack of sincerity.

13      10.     After reviewing Deputy Gil's report, the contraband located in Dearwester's cell and

14  interviewing Plaintiff, I determined that he exhibited a lack of sincerity in his faith.

15      11.     On April 30, 2013, I recommended that Dearwester be removed from the Kosher Meal

16  approved list due to his lack of sincerity and his apparent manipulation of the kosher diet plan.

17      12.     On April 30, 2013, (then) Sgt. Ed Yee approved Dearwester's removal from the kosher

18  diet plan.

19      13.     As a result of Plaintiff's grievances, on June 13, 2013, Rabbi David Wechsler-Azen and

20  I met with Dearwester to evaluate his claim that he should be granted kosher meals.

21      14.     Both Rabbi Wechsler-Azen and I determined that based on Dearwester's own

22  statements and his prior actions he was not sincere in his claim that he required a kosher diet.

23      15.     The Main Jail's stated policy is "to review and approve all requests for religious

24  accommodation unless an inmate's request is not based on his or her sincerely held religious beliefs, or

25  if denying the request will further a compelling Department interest such as avoiding burdensome

26  expenses, burdensome administrative needs, or breaches in security and denial is the least restrictive

27  option available."

28

**2**

**DECLARATION OF TERRY TOLIVER IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND
DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION**

{01530005.DOCX}

16.     The policy states potential compelling interests include, but are not necessarily limited to: maintenance of good order within the jails, security of inmates and facilities, maintenance of discipline within the jails, and severe administrative and financial burdens.

17.     It is the Main Jails goal to provide inmates with the ability to properly practice their religion. The Main Jail provides free Bibles, Torahs, and Qurans to all inmates that request one. Religious leaders are available to inmates upon request, and a number of religious classes are provided each week for inmates to participate in. Inmates are also not prevented from engaging in prayer should they so desire.

18.     I have reviewed **Exhibit E** attached to the index of exhibits.  Based on personal knowledge and experience I know **Exhibit E** to be a true and correct copy of Sacramento County Sheriff's Department Operations 8/12 that was in place during Dearwester's incarceration.

19.     I have reviewed **Exhibit F** attached to the index of exhibits.  **Exhibit F** is a true and correct copy of an April 30, 2013, memorandum I drafted regarding my visit with Dearwester and a recommendation that he be removed from the kosher diet.

20.     I reviewed **Exhibit G** attached to this index of exhibits.  **Exhibit G** is a true and correct copy of the Removal Recommendation Form I filled out on April 30, 2013, recommending that Dearwester be removed from the kosher diet.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _18_ day of April, 2016, at Sacramento, California.

By _____
      Chaplain Terry Toliver,
      Declarant

---

**3**

**DECLARATION OF TERRY TOLIVER IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

{01530005.DOCX}

**EXHIBIT E**



# SHERIFF'S DEPARTMENT COUNTY OF SACRAMENTO

# OPERATIONS ORDER

### Religious Accommodation

The purpose of this operations order is to ensure that legitimate requests by inmates for religious accommodation are handled in a lawful manner.

I.  Policy Statement

It is the policy of the Sacramento County Sheriff's Department to review and approve all requests for religious accommodation unless an inmate's request is not based on his or her sincerely held religious beliefs, or if denying the request will further a compelling Department interest such as avoiding burdensome expenses, burdensome administrative needs, or breaches in security and denial is the least restrictive option available.

II. Intake Procedure

A.  Inmates may profess a religion that requires modesty as a key component of their religious practices. To achieve this level of modesty they are required to wear head coverings. Arrestees at intake shall not be permitted to retain their personal religious head coverings without first being subject to a complete search. Once a cursory search of the arrestee has been conducted and all other personal items have been removed from the arrestee, staff shall escort the inmate to an area of privacy, and instruct the inmate to remove their religious head covering. After reasonably ensuring the inmate's hair and head covering are free of contraband, weapons and drugs, and that the head covering itself is not of sufficient length to be used to hang oneself with, the religious head covering shall be returned and the inmate shall be allowed to replace their head covering before leaving the private area.

B.  Two sets of booking photographs will be taken of arrestees who retain their religious head covering. In one set of photographs the arrestee will wear his/her head covering and in the second set of photographs the arrestee will not be wearing their head covering. Only the staff required for safety and the photographing procedures will be present during this process.

III.   Housing Procedure

A.   All requests for religious accommodation will be initiated by individual inmates, via the facilities "Kite" process, regarding each specific religious accommodation.

Requests will be routed to the facility chaplain for initial review.

The facility chaplain will schedule an interview between the inmate and an appropriate community religious leader (priest, rabbi, imam, etc) approved by the Department.  The community religious leader will attempt to determine the sincerity of the inmate's held religious belief and report those findings, in writing, to the facility commander or his/her designee.

If the inmate's religious belief appears to be sincere, the facility commander or his/her designee will attempt to approve the inmate's request for accommodation unless denial is warranted based on a compelling government interest and denial is the least restrictive option. Each facility commander shall be allowed the latitude to grant or deny a request on a case-by-case basis.

B.   All cases will be documented in writing via a "READ ME" PF 10 incident report.  The burden lies with the Department to show that its decision to deny an inmate's sincere request for religious accommodation was done in a thoughtful manner serves a compelling governmental interest and employs the least restrictive means possible.  This includes the burden to demonstrate that the Department has actually considered and rejected the efficacy of less restrictive measures before denying the requested religious practice.

Laws related to religious accommodation do not provide one definition of what may constitute a compelling government interest. Potential compelling interests include, but are not necessarily limited to:

1.   Maintenance of good order within the jails
2.   Security of inmates and facilities
3.   Maintenance of discipline within the jails
4.   Severe administrative and financial burdens

Case documentation will include adequate evidence supporting the commander's decision when restricting an accommodation.  Evidence may consist of:

1. Budgetary details depicting burdensome expenses of accommodating a request;
2. Details of the administrative burden of accommodating a request;
3. Details describing the readily available alterative means by which the inmate could practice his or her religious beliefs in the jail facility,

SAC 000034

4. Documentation describing which alternatives were denied and why the Department rejected the accommodation request;

5. Evidence of how order, discipline or security will be harmed should the requested accommodation be granted.

D. Common religious requests and how they may be accommodated in light of the general policy noted above:

1. Dress

   a. Dress accommodations will be reviewed case-by-case. Each item of clothing will be inspected for conformance with jail security issues.

2. Grooming

   a. Sentenced inmates requesting legitimate accommodation for relaxed grooming standards shall be granted. This does not absolve the inmate from the requirement to be clean and groomed. Abuses shall result in revocation of the accommodation.

3. Food

   a. All inmate meals cooked in the Department's facilities will be pork-free.

   b. Inmates requesting kosher meals will be served pre-made meals purchased from an authorized kosher vendor and delivered to the Department's facilities. Supplements of approved fresh kosher food will be added to meet basic nutritional standards.

   c. Vegetarian meals will contain no meat. Vegan requests and requirements will be handled on a case-by-case basis.

   d. Holiday food issues will be reviewed on a case-by-case basis.

3. Religious Services

   a. Religious services are provided via a schedule. Inmates must request attendance.

   b. Inmates restricted from contact with other inmates will be allowed a personal religious service with a departmentally approved religious leader of the appropriate faith.

4. Religious Materials

SAC 000035

a. Requests for religious material will be reviewed on a case-by-case basis. Generally, inmates may retain in their cells up to five religious materials once staff ensures the materials meet facility safety requirements. Materials include books such as the Bible or the Koran. All materials requiring binding shall be "soft-bond". No hardbound books shall be retained in cells.

E.  The Department shall treat all inmates requesting religious accommodation equally based on reasonable and legitimate penological interests.

**Appendices:**   List of attachments

**Related Orders:**   Other Operations Orders relating to this subject

**References:**   Related Law

## FIRST AMENDMENT TO THE UNITED STATES (U.S.) CONSTITUTION:

Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison."[1] Inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion."[2] However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' "[3]

## RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT (RLUIPA): It is a federal law stating that:

(a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.[4]

The law applies to any correctional institutional that receives federal dollars.

---

[1] Bell v. Wolfish, 441 U.S. 520 at 545 (1979)
[2] O'Lone v. Estate of Shabazz, 482 U.S. 342 at 348 (1987)
[3] Price v. Johnston, 334 U.S. 266 at 285 (1948)
[4] 42 U.S.C.A. § 2000cc-1

SAC 000036

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."[5] Although RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity.[6]

To merit protection under the Constitution or RLUIPA a religious claim must satisfy two basic criteria:

- The claimant's proffered belief must be sincerely held and the claim must be based on religious belief not purely secular philosophy.[7]   Courts have made it clear though that whether or not an accommodation is central to the faith is not a part of the analysis.[8]

- As long as an inmate sincerely believes a certain practice is a part of their faith, even if obscure or unheard of, a court will consider it. However, the Department is justified when it confirms the sincerity of a belief (no matter how obscure).

## EQUAL PROTECTION CLAUSE OF THE FOURTEEN AMENDMENT TO THE U.S. CONSTITUTION:

Requires the State to treat all similarly situated people equally.[9] Moreover, the Equal Protection Clause entitles each prisoner to "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."[10]

## EIGHTH AMENDMENT TO THE U.S. CONSTITUTION AND CALIFORNIA PENAL CODE 4027:

Satisfaction of RULIPA will satisfy both of these laws rendering them insignificant.

## FREE EXERCISE AND ESTABLISHMENT CLAUSES OF THE 1ST AMENDMENT:

When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.[11] The Turner case sets out four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests. They are:

---

[5] 42 U.S.C.A. § 2000cc-5(7)(A).
[6] Cutter v. Wilkinson, 544 U.S. 709 at 725 (2005)
[7] Callahan v. Woods,  658 F.2d 679 at 683 (C.A.Cal., 1981); Cutter v. Wilkinson, 544 U.S. 709 at 725 (2005)
[8] Shakur v. Schriro, 514 F.3d 878 at 885 (C.A.9 (Ariz.),2008)
[9] City of Cleburne v. Cleburne Living Center, 473 U.S. 432 at 439 (1985)
[10] Cruz v. Beto, 405 U.S. 319 at 322 (1972)
[11] Turner v. Safley, 482 U.S. 78 at 89 (1987)

SAC 000037

(1) Whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";

(2) Whether there are "alternative means of exercising the right that remain open to prison inmates";

(3) Whether "accommodation of the asserted constitutional right" will "impact ... guards and other inmates, and on the allocation of prison resources generally"; and

(4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

The first Turner factor requires the Department to determine whether there is a legitimate penological interest that is rationally related to the disputed regulation. Administrative and budgetary burdens are legitimate penological interests. Other legitimate interests often include the safety, order and maintenance of a facility.

Under the second Turner factor, the Department considers whether the inmate has "alternative means by which he can practice his religion" or is "denied all means of religious expression."[12] For example, in a case that will be discussed below, we will see that inmate Shakur had numerous other means of practicing his religion besides eating a Halal diet. He could keep a copy of the Qur'an in his cell, along with a prayer rug and up to seven religious items. He could receive visits from an imam upon request, and he could participate in the religious observance of Ramadan.

Under the third prong of the Turner test, the Department must consider the "impact [the] accommodation...will have on guards and other inmates, and on the allocation of prison resources generally."[13] Prisons sometimes argue that accommodations will appear to be favoritism but the 9th Circuit has flatly denied this as a consideration.[14] Budgetary concerns are a consideration, but the Department must point to specific data supporting an argument that the budget or administrative demands will be significantly impacted.

Finally, the fourth Turner factor requires the Department to consider whether "there are ready alternatives to the prison's current policy that would accommodate [the inmate] at de minimis cost to the prison."[15] The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns."[16]

---

[12] Ward v. Walsh, 1 F.3d 873 at 877 (C.A.9 (Nev.).1993)
[13] Id. at 878
[14] Id.
[15] Id.
[16] Turner at 90

SAC 000038

## DEFINITIONS FOUND IN THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT:

Several questions arise under RLUIPA. For example, what constitutes a "substantial burden" and what is a "religious exercise"?  What constitutes a "compelling governmental interest" and what are examples of the "least restrictive means"?

A burden is substantial under RLUIPA when the Department "denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs."[17] A prison policy that "intentionally puts significant pressure on inmates...to abandon their religious beliefs...imposes a substantial burden on [the inmate's] religious practice."[18]

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."[19] Although RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity.[20]

There is no one definition of what may constitute a compelling government interest. The United States Supreme Court acknowledged that "maintain[ing] good order, security and discipline, consistent with consideration of costs and limited resources," is a compelling government interest.[21]

Under RLUIPA the Department has the burden of showing that its decision to burden an inmate's religious practice is the least restrictive means possible. The Department "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice."[22]

---

[17] Warsoldier v. Woodford,  418 F.3d 989 at 995 (C.A.9 (Cal.),2005)
[18] Shakur at 889
[19] 42 U.S.C.A. § 2000cc-5(7)(A).
[20] Cutter v. Wilkinson, 544 U.S. 709 at 725 (2005)
[21] Id. at 722.
[22] Warsoldier at 996

SAC 000039

**EXHIBIT F**

MFR

April 30/2013

RE: Dearwester Frank   XREF: 1701654

On this day I recommended that Mr. Dearwester be removed from the "Kosher Meal" SRD approved list.

Among other violations he was accused of violating M/E.03 "Running A Store", and M/F.02 "Contraband Food Storage". Both of these charges were supported by a found "Wanted /4 Sale" list concealed in his cell.

Mr. Dearwester has been receiving an approved "Jewish Kosher" diet since May 1. 2012. That approval was granted as the result of his filing several grievances in which he asserted that he had the right to a Kosher diet based of his religious beliefs. In his grievance dated 4/6/12 he specifically stated that this "did not mean that he wanted to convert/conform to Judaism".

In the review conducted by Chaplain David Clements, he (Clements) expressed that Mr. Dearwester was "attempting to convert to an understanding of how to be close to God "through Catechism (Catholicism) and the Torah (Judaism).

I interviewed Mr. Dearwester today and he claims that he has not been able to convert to Judaism because no Rabbi has been available. I explained that the process to convert is a long process and generally the Jewish faith conversion can not take place in a correctional setting. I explained that the legal requirements for approving a SRD is sincerity on the part of the inmate toward the expressed belief. Mr. Dearwester has no real practical knowledge of the Jewish faith. I told him that his "Wanted/4Sale" list indicates that he is not sincere in his need to consume only Kosher foods for religious purposes and that I would recommend that his approval be terminated. I also said that I would try to schedule an interview with a Rabbi and if that Rabbi tells me to put him on a Kosher diet I will, otherwise he will continue on the Main Line menu.

# EXHIBIT G

## SPECIAL RELIGIOUS DIET PROGRAM
## REMOVAL RECOMMENDATION FORM

3 APPROVED
APR 3 0 2013

Date of Action: _4/30/13_

Inmate name: _Dearwester, Frank_   XREF: _1701654_

**Reason for removal:**

- inmate had a "forsale" list for Kosher food items in his cell.

- upon interviewing him he exhibited a lack of sincerity in the Jewish faith. He did say he would like to talk to a Rabbi- I said I would arrange a meeting.

- He is still claiming that he has not totally decided to become a Jew.

Removal recommended by: _Terry Toliver DiroE Chaplains_   _4/30/13_
  (Name)                    (Title)              (Date)

Approved by:   _SGT.E-YCE_        _Sergeant_      _4/30/13_
                (Name)            (Title)          (Date)

DEARWESTER

KOSHER DIET
&
LOAVES & FISHES

**EXHIBIT H**

**PORTER | SCOTT**

A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
Adam J. DeBow, SBN 305809
350 University Avenue, Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants,
CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK LEE DEARWESTER, | Case No.: 2:13-CV-02066-MCE-EFB P (TEMP) |
| Plaintiff, | **DECLARATION OF BENJAMIN GIL IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| vs. | |
| SACRAMENTO COUNTY SHERIFF'S DEPARTMENT; SHERIFF SCOTT JONES; CHAPLAIN TOLIVER; DEPUTY SHERIFF CORPORAL GIL; DOES 01-25, | **No hearing pursuant to Local Rule 230(l)** |
| Defendants. | Complaint Filed: 10/14/13 |
| _____/ | |

I, BENJAMIN GIL, declare as follows:

1.     I am a Deputy Sheriff at the Sacramento County Sheriff's Department.

2.     I make this Declaration on my own personal knowledge. If called upon to do so, I could and would competently testify about the matters asserted herein.

3.     I worked as a Deputy Sheriff in the Sacramento County Main Jail from November 7, 2010 to March 22, 2015.

1

**DECLARATION OF BENJAMIN GIL IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

{01530009.DOCX}

1    4.    During that time my job duties included: Supervising inmate's days to day operations on

2    the housing floors including meals, recreation time and visits.

3    5.    On April 21, 2013, I witnessed Frank Lee Dearwester ("Dearwester") involved in a fight

4    with two other inmates.

5    6.    Based on the circumstances presented, I believed that Dearwester was the aggressor in

6    the altercation.

7    7.    Following the fight, I conducted a search of Dearwester's Cell.

8    8.    During the search of Dearwester's cell, contraband was located and confiscated,

9    including: three (3) Food Trays from "Normal Chow" (i.e. not from kosher tray), thirty-three (33) bags

10   of carrot sticks from the kosher diet tray, and a "Wanted/4 Sale Sheet" with items listed to sell,

11   including a plain bagel, an English muffin, a whole bell pepper, a whole tomato, a whole banana.

12   9.    The food items listed on the "Wanted/4 Sale Sheet" are provided exclusively on the

13   kosher diet tray.

14   10.    During the course of my investigation of the incident I interviewed all parties involved

15   in the altercation. This included interviewing the two other inmates involved: Shiraz Malik and Shawn

16   Thompson. I recorded a summary of their statements.

17   11.    The statements taken from the other inmates involved mentioned that Dearwester had

18   been "harassing" them to receive a normal food tray in addition to his kosher food tray.

19   12.    Following the incident, in the normal course of my job duties as a Deputy Sheriff at the

20   Main Jail, I wrote an incident report detailing the altercation between Dearwester and the other

21   inmates, as well as and my findings inside Dearwester's Cell.

22   13.    I forwarded this report to Chaplain Toliver because of Dearwester's status on the kosher

23   diet plan. The contraband located in his cell and the statements of the other inmates involved in the

24   fight indicated to me that Dearwester was attempting to manipulate the kosher diet program.

25   14.    I have reviewed **Exhibit I** attached to the index of exhibits.  **Exhibit I** is a true and

26   correct copy of the Inmate Incident Report I drafted on April 21, 2013.

27

28

**2**

**DECLARATION OF BENJAMIN GIL IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY
SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION**

{01530009.DOCX}

1        15.    I have reviewed **Exhibit J** attached to the index of exhibits.  **Exhibit J** is a photograph

2 that I took of the "Wanted/4 Sale Sheet" I found located in Dearwester's cell on April 21, 2013.

3        16.    Pursuant to the inmate handbook, inmates are not allowed to store food/beverages,

4 including fruit, other than allowed commissary and tournament candy in their cell.

5        17.    Pursuant to the inmate handbook, meals/fruits must be eaten at specified meal times or

6 be discarded and shall not be stored in the inmates' cell.

7        18.    Pursuant to the inmate handbook, all cups and trays must be turned in and accounted for

8 following mealtime prior to your returning to any other activities.

9        19.    Pursuant to the inmate handbook, inmates may not give or trade food or drink items.

10        20.    Pursuant to the inmate handbook and Sacramento County Main Jail policy, jail

11 personnel shall complete a report when an inmate assaults another inmate, fails to return jail items to

12 the proper location, receives extra portions without permission of an officer, runs a store, or stores food

13 or other contraband.

14        21.    I have reviewed **Exhibit K** attached to the index of exhibits. Based on my experience, I

15 know **Exhibit K** to be a true and correct copy of the cover page, page 37, page 38, and pages 50-60 of

16 the Inmate Handbook at the time of Dearwester's incarceration. The inmate handbook is given to all

17 inmates as they enter the facility.

18       I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day

19 of April, 2016, at Sacramento, California.

20

21                    By

22                        Deputy Benjamin Gil,

                       Declarant

23

24

25

26

27

28

**DECLARATION OF BENJAMIN GIL IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

{01530009.DOCX}

# EXHIBIT I

```
DATE 04/22/2013     SACRAMENTO COUNTY SHERIFF'S DEPARTMENT          JIPRAC
TIME 17:06:16           INMATE INCIDENT REPORT             PAGE   1 OF 3

XREF- 1701654  NAME- DEARWESTER      FRANK        LEE       DOB 07/12/1972
HOUSING LOCATION- NMJ 8E  1   02A  TSEP        PROJECTED RELEASE DATE-

  REPORT:   NUMBER- 0957187608  TYPE- MAJ  CAT- 3  STATUS- PEND   FACILITY- NMJ
            DATE- 04/21/2013 TIME- 1756  OFFICER- 602   GIL
            REVIEWER- SGT R ROBERTS #46   WAIVED-   DELIVERED- 04/22/2013  1659
            LAST MODIFIED- 04/22/2013 1659  BY- 2107549

  INCIDENT: DATE- 04/21/2013 TIME- 1545  LOCATION-  8 EAST INDOOR REC.

VIOLATIONS: RULE NO.       DESCRIPTION           CAT  PLEA DISPO    DATE

          M/B.01      ASSAULTS/BATTERY AGAINST     3
          M/C.06      PROPERTY-FAILURE TO RETUR    3
          M/C.15      PLUMBING, USED FOR UNINTE    2

HEARING:  DATE- 04/24/2013 TIME- 2359  OFFICER-
          RESULT-
          ROLLUP-   GOOD DAYS: AVAIL- _____ LOST-    0
          G/W TIME TAKEN FROM CASE _____ CHG _____


DISCIPLINE: TYPE   FROM: DATE    TIME      TO:  DATE    TIME
```

NO HEARING WILL BE HELD SOONER THAN 24 HOURS UNLESS YOU WAIVE THIS TIME AND
REQUEST AN IMMEDIATE HEARING.  WAIVED:  YES ___  NO ___

```
***********************************************************************
* INMATE              * HEARING OFFICER      * FACILITY COMMANDER   *
*                     *                      *                      *
*                     *                      *                      *
*                     *                      *                      *
*                     *                      *                      *
***********************************************************************
```

APPEALS REGARDING THE HEARING OFFICER'S DECISION MUST BE MADE WITHIN FIVE (5)
DAYS AND MUST BE IN WRITTEN FORM TO THE DIVISION COMMANDER, WHO WILL MAKE A
FINAL DISPOSITION WITHIN TWENTY (20) DAYS

DATE 04/22/2013        SACRAMENTO COUNTY SHERIFF'S DEPARTMENT               JIPRAC
TIME 17:06:16                 INMATE INCIDENT REPORT                 PAGE   2 OF 3

    INCIDENT REPORT NUMBER- 0957187608   NARRATIVE TEXT

ADDITIONAL VIOLATIONS:
M/E.03 RUNNING A STORE              CAT 2
M/E.09 CRIMINAL STATUTE (PC 242)   CAT 3
M/F.01 CONTRABAND                  CAT 2
M/F.02 CONTRABAND FOOD STORAGE     CAT 2

1545 HOURS, 4/21/2013 (SUNDAY): I, DEPUTY GIL #602, WAS ASSIGNED TO THE
SACRAMENTO COUNTY MAIN JAIL AS A CONTROL/FLOOR OFFICER. DEPUTY DRURY #1322
WAS MY PARTNER.

INMATE FRANK DEARWESTER X-1701654 WAS IN INDOOR RECREATION USING THE HAIR
CLIPPERS. INMATE WORKER MALIK X-4804963 WAS SITTING IN THE WORKERS STATION
WAITING FOR CHOW TO ARRIVE ON THE FLOOR. DEARWESTER TOLD MALIK IN SUMMARY:

                "COME HERE BITCH, COME HERE BITCH."

MALIK DID NOT ENGAGE DEARWESTER AND JUST CALLED HIM A CHILD MOLESTER. WHEN
MALIK WAS BRING BACK THE CHOW CARTS DEARWESTER PUNCHED MALIK ONE TIME WITH HIS
FIST. MALIK PUNCHED DEARWESTER ONCE IN SELF DEFENSE. INMATE WORKER
THOMPSON X4797427 SAW MALIK GET ASSAULTED AND RAN FROM THE 200 POD TO STOP
DEARWESTER FROM ASSAULTING MALIK.

THOMPSON TACKLED DEARWESTER TO THE GROUND. DEARWESTER THEN TRIED TO PUNCH
THOMPSON, SO THOMPSON PUNCHED DEARWESTER TWICE IN THE SIDE OF THE FACE.

I SAW THE ALTERCATION TAKING PLACE AND ORDERED THEM TO STOP FIGHTING. MALIK AND
THOMPSON, WHO WERE ON TOP OF DEARWESTEWR, HOLDING HIM DOWN, GOT OFF AND SAT
DOWN IN THE 200 POD.

DEARWESTER WAS HANDCUFFED WITHOUT INCIDENT. DEARWESTER TOLD ME THE FOLLOWING
IN SUMMARY:

            "I'M SORRY FOR FIGHTING. I FELT LIKE I HAD TO BECAUSE HE CALLED
            ME A CHILD MOLSTER AND HAS BEEN HARASSING ME ABOUT MY KOSHER FOOD
            TRAY. I HURT ON THE SIDES OF MY FACE, BUT I DO NOT NEED MEDICAL
            ATTENTION. I DO NOT WANT TO PRESS CHARGES. I HIT HIM FIRST."

I SPOKE WITH MALIK REGARDING THE INCIDENT. HE TOLD ME THE FOLLOWING IN
SUMMARY:
            "I WAS JUST SITTING IN MY CHAIR IN MY WORK STATION WHEN HE
            (DEARWESTER) CALLED ME A BITCH, SO I CALLED HIM A CHILD
            MOLSTER. WHEN I WALKED OVER TO GET THE CHOW CARTS, I MADE
            SURE TO STAY AWAY FROM HIM. WHEN I WAS PULLING THE CART BACK
            HE CAME OVER AND PUNCHED ME ONCE IN THE FACE. I PUNCHED HIM
            BACK AND THEN THOMPSON CAME OVER AND TACKLED HIM TO THE GROUND.

DATE 04/22/2013        SACRAMENTO COUNTY SHERIFF'S DEPARTMENT          JIPRAC
TIME 17:06:16                INMATE INCIDENT REPORT              PAGE   3 OF 3

INCIDENT REPORT NUMBER- 0957187608  NARRATIVE TEXT

      THOMPSON PUNCHED HIM TWICE BECAUSE DEARWESTER WAS TRYING TO HIT
      HIM. THEN YOU GUYS (DEPUTIES) CAME. DEARWESTER HAS BEEN HARASSING
      THE OTHER WORKERS, POKING THEM WITH A STICK THROUGH THE FOODPORT.
      HE IS UPSET BECAUSE WE WILL NOT GIVE HIM AN NORMAL TRAY
      ON TOP OF HIS KOSHER TRAY."

I SPOKE WITH INMATE THOMPSON REGARDING THE INCIDENT. HE TOLD ME THE FOLLOWING
IN SUMMARY:

      I SAW DEARWESTER PUNCH MALIK, SO I RAN FROM THE 200 POD TO HELP HIM.
      I TACKLED DEARWESTER TO THE GROUND, BUT HE TRIED TO PUNCH ME, SO I
      HIT HIM TWICE IN THE FACE. THEN YOU GUYS CAME AND WE BACKED OFF.
      HE HAS BEEN HARASSING THE OTHER WORKERS POKING THEM WITH HIS T.V.
      CHANGER STICK. HE JUST WANTS A NORMAL TRAY ON TOP OF HIS KOSHER DIET."

DEARWESTER HAD REDNESS AROUND BOTH SIDES OF HIS FACE AND COMPLAINT OF PAIN.

A CELL SEARCH OF DEARWESTER'S CELL #102 REVEALED THE FOLLOWING ITEMS OF
CONTRABAND.

-3 FOOD TRAYS (FROM NORMAL CHOW, NOT FROM KOSHER).
-WASHER SHARPENED TO CUT OBJECTS.
-A STORE "WANTED/4 SALE SHEET" ITEMS LISTED TO SELL, (PLAIN BAGEL, ENGLISH
MUFFIN, WHOLE BELL PEPPER, WHOLE TOMATO, WHOLE BANANA. THESE ITEMS ARE ONLY
ON KOSHER DIET TRAYS.
- LOAVES & FISHES BUSINESS CARD, W/DEARWESTER'S HANDWRITING READING "YOU BROKE?
NEED A VISITOR? WRITE THEM A LETTER & GET ON THE WAITING LIST. $15.00/MO. +
WEEKLY SOCIAL VISITS.
-33 BAGS OF CARROTS FROM KOSHER DIET TRAYS.
-SEVERAL STYROFOAM CUPS WITH THE BOTTOMS CUT OUT IN HIS TOILET BOWL. THE WATER
IN THE TOILET BOWL WAS REMOVED.

DEARWESTER PUNCHED MALIK A VIOLATION OF P.C. 242.

THE CHAPLIN WAS NOTIFIED OF THE INCIDENT AND WAS FORWARDED A COPY OF THIS
WRITE-UP.

****** END OF REPORT  ******

**EXHIBIT J**

Candy bars, cookies, etc. too.

# 4 SALE:

Peanut Butter (1.12 oz pkt) = 2 items

Plain Bagel = 3 items
English Muffin
whole bell pepper
whole tomato

3 pencils

4 state shampoos

1 eraser
whole banana
2 Borraced fruit punch
5 sweet 'n low
1 stamped envelope
10 sheets lined paper } 1 item each

Tinactin antifungal
foot cream (1 oz tube) = 4 items

Books = offer/trade



## Loaves & Fishes
Jail Visitation

YOU BROKE? NEED A VISITOR?
WRITE THEM **Geraldine Baskerville**
A LETTER & GET ON THE WAITING LIST.
1321 North C Street   PO Box 2161
Sacramento, CA 95811   Sacramento, CA 95812
Jailvisitation@yahoo.com   (916) 447-9472
SOCIAL   $15.00/mo. + WEEKLY
VISITS.   fax (916) 447-0518

**EXHIBIT K**

# Sacramento County Sheriff's Department



# Main Jail
# Inmate Handbook



7421 FORM 095 (REVISED 12/2011)

CO INT 0294

b.    Lunch:  11:00 a.m.

*Almuerza:  11:00 p.m.*

c.    Dinner:  4:00 p.m.

*Cena:    4:00 p.m.*

2.    Meals will only be eaten in your cell or on the tables located in each day room.

*Las comidas se tomaran únicamente en su celda o en las mesas que se encuentran en cada sala.*

a.    All cups and trays must be turned in and accounted for prior to your returning to any of your activities.

*Todas las tazas y bandejas se deben dar vuelta adentro y explicar antes de su volver a cualesquiera de sus actividades*

b.    No food/drink is to be stored in your cell other than commissary food or tournament candy.

*No hay alimento/bebida ser almacenado en su célula con excepción del alimento del comisario o del caramelo del torne.*

c.    Meals/fruits must be eaten at specified meal times or be discarded. Meals/fruit shall <u>not</u> be stored in your cell.

*Las comidas/frutas se deberán comer a las horas especificados de comida, o tendrán que descartarse.  Las comidas/frutas no se pueden almacenar en células de los internos.,*

d.    You may not take extra food/drink items other than what is allowed to you.

*Ud. No podrá tomar artículos adicionales de comidas/bebidas aparte de los que se le asignen.*

e.    You may not give or trade food or drink items.

*Ud. No podrá dar o intercambiar artículos de comidas o bebidas.*

37

CO INT 0330

f.   Failure to abide by the above rules may result in disciplinary action.

*En no cumplir con las reglas anteriores puede tener como consecuencia medidas disciplinarias.*

**D.   SOCIAL VISITS - TELEPONE NUMBER FOR PUBLIC INFO:**
**874-6752**
*VISITAS SOCIALES - TELEFONO DE INFORMACION PUBLICA:*
*874-6752*

Each inmate is authorized two (2) 45 minute social visits a week, Sunday through Saturday. Morning/Afternoon visiting hours are 7:45, 8:45, 9:45, 10:45, 11:45, 12:45 and 1:45. Evening visiting hours are 4:45, 5:45, 6:45, 7:45 and 8:45. Visits are not permitted during mealtime, from 2:45 p.m. until 4:45 p.m. All visitors must leave the visit area by 10:45 p.m. No more than three (3) people, including infants and children, are allowed to visit at one time. Valid identification must be presented in order to visit.

*Cada preso es autorizado a dos (2) 45 minutos visitas sociales a la semana, de domingo a sábado. Mañana / hora por la tarde visita son de 7:45, 8:45, 9:45, 10:45, 11:45, 12:45 y 01:45. Por la noche las horas de visita son 4:45, 5:45, 6:45, 7:45 y 8:45. Las visitas no están permitidas durante las comidas, desde las 2:45 p.m. hasta las 4:45 p.m. Todos los visitantes deben dejar el área de la visita a las 10:45 p.m. No más de tres (3) personas, incluyendo a los bebés y los niños, se les permite visitar a la vez. Identificación válida debe ser presentada con el fin de visitar.*

No person released from the Main Jail or the Rio Cosumnes Correctional Center within the past 30 days, will be allowed to visit another person in custody at the Main Jail without the consent of the Jail Commander or Watch Supervisor. Within this period, no person that was released from custody from these facilities will be allowed to place monies or request monies removed from any in-custody person's account.

*No se permitirá que ninguna persona que haya salido de la Cárcel Principal o del Centro Correccional Rio Cosumnes en los últimos 30 días viste a otra persona encarcelada en la Cárcel Principal sin el consentimiento del Comandante de la Cárcel o el Supervisor de Guardia. En este periodo, no se permitirá que ninguna persona de este correccional que hayamos puesto en libertad deposite dinero o solicite dinero a retirarse de la cuenta de cualquier encarcelado.*

In addition, this facility will not allow any person whom, **having been previously convicted of a felony and confined in any State prison within this State,** to

38

*Todo lo que aparece en las categorías I y II*

E. You may appeal any disciplinary decision by writing your reasons on an Inmate Grievance form and addressing it to the Jail Commander. All appeals must be filed within five days of the findings.

*Ud. Puede apelar cualquier decisión disciplinaria escribiendo sus razones en un formulario de Quejas de Reclusos y enviándolo al Comandante de la Cárcel. Todas las apelaciones deberán presentarse antes de transcurrir 5 días de las resoluciones.*

    1.     Disciplinary appeals will be answered within five working days from the time they were received.

       *Las apelaciones disciplinarias serán respondidas dentro de cinco días hábiles del momento en que se recibieron.*

    2.     The Jail Commander's decision on all appeals shall be final.

       *La decisión del Comandante de la Cárcel sobre todas las apelaciones será final.*

## XI.   INMATE RULES OF CONDUCT
### *REGLAS DE CONDUCTA DE LOS RECLUSOS*

A.   **Inmate conduct towards staff**: Sworn jail personnel shall complete a disciplinary report when you violate any of the following rules:

*Conducta de los reclusos hacia el personal: El personal juramentado de la cárcel presentara un informe disciplinario al infringirse cualquiera de las siguientes reglas:*

    1.     Assaults, upon any jail staff member (C-III). (As described in the California Penal Code.) Includes spitting and biting.

       *Actos de agresión sobre cualquier miembro del personal de la cárcel (C-III) (tal como se describe en el Código Penal de California). Incluye escupir y morder.*

    2.     Cursing directly or indirectly at, or making obscene gestures towards jail staff (C-II).

       *Insultar directa o indirectamente o hacer gestos obscenos hacia el personal de la cárcel. (C-II)*

    3.     Information, falsely furnished to jail staff with intent to deceive (C-II).

CO INT 0343

*Proporcionar información falsa al personal de la cárcel con el propósito de engaviar.  (C-II)*

4.      Insubordination/disobedience towards jail staff.  Inmates shall follow all lawful directives/orders issued by jail staff (C-II).

*Insubordinación/desobediencia hacia el personal de la cárcel.  Los reclusos tendrán que cumplir todas las directivas u ordenes legales que les de el personal de la cárcel.  (C-II)*

5.      Threats, directed towards jail staff whether direct or implied (C-II).

*Amenazas dirigidas hacia el personal de la cárcel, directo o indirecto. (C-II)*

**Inmate Conduct Towards Other Inmates**
*Conducta de los reclusos hacia los demás reclusos*

1.      Assaults/battery, against any jail inmate. (C-III) (PC 240/242)

*Agresión/contacto físico lesivo contra cualquier recluso de la cárcel.  (C-III) (CP 240/242)*

2.      Charging another inmate for services (e.g., barber) (C-II).

*Cobrarle a otro recluso por servicios (como de peluquero). (C-II)*

3.      Extortion, verbal threats and/or coercion (C-III) (PC 518).

*Extorsión, amenazas verbales o coerción. (C-III) (CP 518)*

4.      Sexual conduct, engaging in or coercing other inmates to engage in sexual conduct. (C-III) (Refer Penal Code)

*Conducta sexual, participar o obligar a otros reclusos a participar en conducta sexual.  (C-III) (Consultar el Condigo Penal)*

B.      **Violations Against Property, Building, and Furnishings**
        *Violaciones contra la propiedad, el edificio y los muebles*

1.      Equipment, non-authorized use of (C-I).

*Usar equipos sin autorización.  (C-I)*

2.      Fire sprinklers or alarms, tampering with (C-III) (PC 148).

51

*Descomponer los rociadores o alarmas contra incendios. (C-III) (CP 148)*

3. Fires, arson or starting of (C-III) (PC 451).

   *Incendiarismo o iniciar un incendio.  (C-III) (CP 451)*

4. Blocking/covering, of any windows, lights, vents, and intercoms. (C-I)

   *Obstaculizar o cubrir ventanas de puerta, luces, rejillas de ventilación e intercomunicadores.  (C-I)*

5. Property, theft (of any kind), misuse, or destruction of another inmate's (C-III) (PC 484, 488).

   *Robo (de cualquier tipo), uso indebido o destrucción de la propiedad de otro recluso.  (C-III) (CP 484, 488)*

6. Property, failure to return any jail items assigned or checked out (C-II).

   *Propiedad – no devolver cualquier articulo de la cárcel que se le ha asignado o que ha chequeado.  (C-II)*

7. Television, tampering with antenna leads, extreme volume, or other intentional damage. (C-II)

   *Televisión – manipular indebidamente las antenas, poner el volumen demasiado alto o cualquier otro zafio intencional.  (C-II)*

8. Plumbing, deliberate clogging of (C-II).

   *Atascar intencionalmente las caferías.  (C-II)*

9. Locks/Food ports, tampering with (C-II).

   *Descomponer cerrojos o las ventanillas de alimentos. (C-II)*

10. Electrical outlets, any tampering with or misuse of (C-II).

    *Descomponer o usar indebidamente los enchufes eléctricos.  (C-II)*

11. Hanging or affixing anything to the building or jail furnishings. (C-I)

    *Colgar o fijar cualquier pared, puerta, mesa u otro mueble de la cárcel. (C-I)*

12. Telephones, slamming of or extended use of over 30 minutes. (C-I)

CO INT 0345

*Golpear el teléfono o tener conversaciones telefónicas extendidas de más de 30 minutos. (C-I)*

13.     Vandalism (C-III)

*Vandalism (C-III)*

14.     Marking or defacing any wall, door, table, or other jail furnishing (C-I).

*Marcar o desfigurar cualquier pared, puerta, mesa u otro mueble de la cárcel. (C-I)*

15.     Plumbing, using for unintended purposes (C-II).

*Usar las caferías para fines otros que su propósito. (C-II)*

16.     Clothing, bedding, towels, intentional destruction of for any purpose. (C-II)

*Destrucción intencional de la ropa, ropa de cama, toallas por cualquier motivo. (C-II)*

C.     **General Conduct within the Housing Unit**
       *Conducta general dentro del Pabellón de Celdas*

1.     Cell, entering one assigned to another inmate or giving permission to another inmate to enter your cell is prohibited (C-II).

*Celda – esta prohibido entrar en una celda asignada a otro recluso o dar permiso a otro recluso a entrar en su celda (C-II).*

2.     Cleaning, failure to perform cleaning duties or to maintain a clean and orderly cell (C-I).

*Limpieza – no hacer sus quehaceres de limpieza o no mantener una celda limpia y ordenada. (C-I)*

3.     Furniture, climbing on or over railings, banisters, or furniture (C-I).

*Muebles – treparse o saltar sobre las barandas, pasamanos o muebles. (C-1)*

4.     Clothing, not fully clothed when outside of cell or shower stall (C-I).

*Ropa – no estar completamente vestido cuando esta afuera di su celda o de la ducha. (C-I)*

CO INT 0346

5.  Counts, failure to rise for or respond to.  Interfering with or delaying count (C-II).

    *Conteo – no levantarse o responder a los llamados para conteo.  Causar demoras o interferir con el conteo.  (C-II)*

6.  Doors and windows, pounding on, rattling or yelling through, except in case of emergencies (C-II).

    *Puertas y ventanas – golpear, hacer ruidos o gritar, excepto en casos de emergencia.  (C-II)*

7.  Housing Unit, unauthorized entry.  (C-II)

    *Pabellón de vivienda – ingreso no autorizado.  (C-II)*

8.  Lock down, failure to comply when scheduled or directed by staff or failing to respond to such order in a timely manner (C-II).

    *Encierro – no cumplir con el procedimiento de encierro cuando esta programado o lo ordene el personal, o no responder a una tal orden de manera oportuna. (C-II)*

9.  Mattresses, removing from cells or unauthorized use of. (C-I)

    *Colchones – sacarlos de las celdas o darle un uso no autorizado.  (C-I)*

10. Meals, eating in areas other than designated eating areas (C-I).

    *Comidas – comer en áreas que no son las designadas para comer. (C-I)*

11. Meals, inmates shall not receive extra portions without permission from officer.

    *Comidas – los reclusos no recibirán porciones adicionales sin permiso del guardia.*

12. Mezzanine, throwing items off of or on to (C-I).

    *Mezzanines – tirar objetos del o al mezanines. (C-I)*

13. Mezzanines loitering on (C-I).

    *Mezzanines – holgazanear en los mezanines. (C-I)*

CO INT 0347

14. Shower, more than one person in a stall (C-II).

   *Duchas – más de una persona en una ducha. (C-II)*

15. Shower, not fully dressed when going to or from the shower stall (C-I).

   *Duchas – no estar completamente vestido en camino a las duchas o de regreso de ellas. (C-I)*

16. Painted lines in pod, crossing the red painted line on the floor separating the cells from the day room without officer's prior approval (C-I).

   *Líneas pintadas en los pabellones – cruzar la línea pintada de rojo en el piso que separa las celdas de la sala común sin la autorización previa del guardia. (C-1)*

17. Shower shoes, wearing outside of cell or shower stall as a supplemental shoe is prohibited due to the nonskid type of sole (C-I).

   *Zapatos de ducha – esta prohibido su uso fuera de la celda o de la ducha como par adicional de zapatos, debido a la suela para no resbalarse. (C-I)*

18. Clothing/bedding, hanging or tying to the building or jail furnishings. Bringing bedding or mattress into the day room area or using for unintended purposes (C-I).

   *Ropa/ropa de cama – colgar o amarrar al edificio o a los muebles de la cárcel. Traer la ropa de cama o el colchón al área de la sala común o usarlos para fines que no son su propósito. (C-I)*

19. Staircase, loitering on, sliding down, running down, using the stairs when not housed on the upper tier other than when showering (C-I).

   *Escaleras – holgazanear, resbalarse por la barrada, subir o bajar corrigenda, usar las escaleras cuando no esta alojado en el piso alto, excepto par ir a ducharse. (C-I)*

**General Rules of Conduct- Inmate**
*Regulares generales de conducta*

1. Clothing, wearing for purposes other than intended use or in a gang fashion (i.e., headband, rags, cuff rolling, low riding) (C-I).

   *Ropa – usar para fines que no son su propósito o al estilo de alguna pandilla (por ejemplo usar bandas de cabeza, remangarse los puños, usar los pantalones muy bajos). (C-1)*

CO INT 0348

2.  Clothing, wearing shower shoes outside of shower stall or cell is prohibited (C-I).

    *Ropa – esta prohíbo usar los zapatos de ducha fuera de la ducha o de la celda. (C-I)*

3.  Commissary, buying from or selling to other inmates, trading, and/or loaning of commissary, (possession of pay/owe slips), (running a store), (two for one), possession of over $50.00 over approved draw on the current commissary menu is prohibited (C-II).

    *Comisario, la compra de o vender a otros internos, el comercio, y / o préstamo de la comisaría, (posesión de pago / debe desliza), (que se ejecuta una tienda), (dos por uno), la posesión de más de $ 50,00 por sorteo aprobado en el actual comisario menú está prohibido (C-II).*

4.  Communication, unauthorized to other inmates in other housing pods/units. Unauthorized communication includes but is not limited to: written, verbal, gestures, signals, and toilet/sink/vent talking (C-II).

    *Comunicación – no autorizada a otros reclusos en otros pabellones de vivienda. La comunicación no autorizada incluye, aunque no se limita a: comunicación escrita, verbal, gestos, señales y hablar por las rejillas de ventilación de los inodoros/lavatorios. (C-II)*

5.  Communication, inmates shall not communicate to persons outside of the jail. This includes but is not limited to yelling from outdoor recreation or communicating from a county vehicle or bus (C-III).

    *Comunicación – los reclusos no se comunicaran con personas al exterior de la cárcel. Esto incluye, aunque no se limita a gritar desde el recreo al aire libre o comunicarse desde un vehículo o autobús del condado. (C-III)*

6.  Correspondence, sending of coded messages (C-II).

    *Correspondencia – enviar mensajes codificados. (C-II)*

7.  Correspondence, attempting to send or pass or receive non-confidential letters as confidential mail (C-II).

    *Correspondencia – tratar de enviar o pasar o recibir cartas de no confidenciales como correspondencia confidencial. (C-II)*

56

8. Material of obscene nature depicting violence, racial hatred, violence towards law enforcement which in the estimation of jail staff compromises the security of the facility is prohibited (C-II).

   *Esta prohibido todo material de naturaleza obscena que represente violencia, odios raciales, violencia hacia las fuerzas del orden publico que, a juicio del personal de la cárcel, constituye una amenaza a la seguridad del correccional. (C-II)*

9. Criminal statute, violations of (C-III).

   *Estatuto penal – violaciones. (C-III)*

10. Attempted suicide (C-II).

    *Intento de suicidio. (C-II)*

11. Cursing, loud or boisterous yelling or swearing at other inmates (C-I).

    *Insultar, gritar y hacer ruidos fuertes, agraviar verbalmente a otros reclusos. (C-I)*

12. Doors, interfering (in any way) with the opening and closing of. (C-II)

    *Puertas – interferir (de cualquier manera) con el abrir y cerrar de puertas. (C-II)*

13. Drugs or alcohol, unauthorized possession or under the influence (C-III) (PC 4573.6, H&S 11550).

    *Drogas o bebidas alcohólicas – posesión no autorizada o estar bajo la influencia. (C-III) (CP 457.6, H&S 11550)*

14. Elevator, failing to face the rear of, when in the presence of, or when directed by, an officer (C-I).

    *Ascensores – no mirar hacia la parte trasera del ascensor, cuando se este en presencia de un guardia o cuando un guardia le da la orden de haberlo. (C-I)*

15. Escape (C-III) (PC 4532).

    *Escapatoria – (C-III) (CP 4532)*

16. Facility violation or statute, aiding or abetting (C-III) (PC 31).

CO INT 0350

*Violación del correccional o de estatuto – ayudar e incitar (C-III) (CP 31)*

17. Gambling or possession of gambling paraphernalia (C-II).

   *Juegos – o posesión de artículos de juegos de azar. (C-II)*

18. Gangs, use of hand sign or any other gestures (C-I).

   *Pandillas – uso de gesto de mano o cualquier otro gesto.  (C-I)*

18. Hands, removal from pants when outside of a housing floor in the presence of an officer or other jail staff (C-II).

   *Manos – sacarlas de los pantalones al estar fuera de un piso de vivienda, en presencia de un guardia de la orden de hacerlo.  (C-1)*

20. If hair is braided, no foreign materials such as string, rubber bands, jail issued clothing material, or anything else similar shall be tied or affixed to the braid.  The braid must be woven with the hair itself.  Extensions, beads, etc... are considered contraband and shall be removed.   The property officer will put them in your property.   Hair ties purchased through commissary are permitted.

   *Si el pelo es trenzado, no se atará ni será puesto ningunos materiales extranjeros tales como secuencia, gomas, material que arropa publicado cárcel, o todo lo demás similar a la trenza.  La trenza se debe tejer con el pelo sí mismo.  Extensiones, granos, etc.... se consideran contrabando y será quitado.   El oficial de la característica los pondrá en su característica.  Los lazos del pelo adquiridos a través de la comisaría están permitidos.*

21. Nails shall not extend past the tip of your fingers and thumb, for hygiene and security purposes (C-I).

   *Unas - se mantendrán de tal forma que no se extiendan mas allá de la punta del dedo o del pulgar por motivos de higiene y seguridad.  (C-I)*

22. Horseplay, running (except in outdoor recreation), pushing, shoving of any person, wrestling is prohibited (C-II).

   *Esta prohibido hacer payasadas, correr (excepto en el área de recreo exterior), empujar, dar de empellones a cualquier persona, participar en lucha libre.  (C-II)*

58

CO INT 0351

23.   Impersonation of another person (staff or inmate) (C-III) (PC 529).

*Hacerse pasar por otra persona (bien sea un recluso o miembro del personal). (C-III) (CP 529)*

24.   Identification wristbands, altering, damaging, exchanging, or removal of (C-II).

*Pulseras de identificación – alterarlas, dañarse, intercambiarlas o sacárselas. (C-II)*

25.   Indecent exposure (C-III) (PC 314).

*Exhibición impúdica. (C-III) (CP 314)*

26.   Intercom, pressing unnecessarily or repeatedly without good cause, when a kite could be used, or making excessive noise which unnecessarily activates the alarm (C-II).

*Intercomunicadote – usarlos innecesaria o repetidamente sin tener un buen motivo o hacer ruido excesivo, lo cual active la alarma sin razón. (C-II)*

27.   Razor, unauthorized possession of a razor or any part of a razor (C-II).

*Rasurado – posesión no autorizada de una rasura doro cualquier parte de una rasuradota. (C-II)*

28.   Riot/Disturbance, engaging in, encouraging or coercing (C-III) (PC 404, 406.6).

*Motines/disturbios – participar, fomentar u obligar a otros a participar. (C-III) (CP 404, 406.6)*

29.   Smoking, prohibited within the facility; or any county inmate transportation vehicle (C-III).

*Fumar – esta prohibido dentro del correccional en cualquier vehículo de transporte de reclusos del condado. (C-III)*

30.   Weapons/Explosive devices, making or possession of is prohibited (C-III) (PC 4502).

*Armas/explosivas – se prohíbe su fabricación o tenencia. (C-III) (CP 4502)*

31.   Razor, misuse or destruction of any jail issued electric razor (C-II).

CO INT 0352

*Rasuradota – uso indebido o destrucción de cualquier rasuradota eléctrica proporcionada por la cárcel. (C-II)*

32. Communication, unauthorized use of pod telephones, pro per telephone, TDD telephones, and any jail staff telephone (C-III).

   *Comunicación – uso no autorizado de teléfonos en los pabellones, teléfonos para sordos y cualquier teléfono del personal de la cárcel. (C-II)*

33. Material of pornographic nature is prohibited (C-I).

   *Están prohibidos los materiales de naturaleza pornográfica. (C-II)*

34. Indecent exposure, intentionally exposing yourself to another person for the purposes of annoyance or disrespect (staff or inmate) (C-II).

   *Exhibición impúdica – exhibirse intencionalmente a otra persona con el fin de molestaría o faltarle al respeto (personal o reclusos). (C-II)*

35. Littering, not using trash receptacles (C-I).

   *Echar basura – no usar los basureros. (C-I)*

36. Spitting anywhere except sink or toilet is not permitted (C-I).

   *No se permite escupir en ningún lugar excepto el lavatorio o el inodoro. (C-I)*

D. **Contraband**
   *Contrabando*

1. Contraband, inmates shall not possess more than $50.00 over the approved draw amount listed on the commissary menu of jail commissary or any items which are not sold or issued by jail personnel (i.e., tobacco, matches, lighters, strikers, string, paper clips, pens, metal clasps, etc.) (C-II).

   *El contrabando, los reclusos no debe poseer más de $50.00 más la cantidad dibujar autorizados que figuran en el menú de la comisaría de la cárcel comisario o los artículos que no son vendidos o emitidos por el personal de la cárcel (es decir, el tabaco, fósforos, encendedores, los huelguistas, cuerdas, clips de papel, bolígrafos, cierres metálicos, etc) (C-II).*

2. Contraband, inmates shall not store food/beverages (including fruit), other than allowed commissary and tournament candy (C-II).

CO INT 0353

# EXHIBIT L

1 | **PORTER | SCOTT**
A PROFESSIONAL CORPORATION
2 | John R. Whitefleet, SBN 213301
Adam J. DeBow, SBN 305809
3 | 350 University Avenue, Suite 200
Sacramento, California 95825
4 | TEL: 916.929.1481
FAX: 916.927.3706
5 |
Attorneys for Defendants,
6 | CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL

7 | **UNITED STATES DISTRICT COURT**

8 | **EASTERN DISTRICT OF CALIFORNIA**

9 |

10 | FRANK LEE DEARWESTER,                Case No.: 2:13-CV-02066-MCE-EFB P (TEMP)

11 |
                  Plaintiff,            **DECLARATION OF MARY KIMBRELL IN**
12 |                                     **SUPPORT OF DEFENDANTS CHAPLAIN**
                                         **TOLIVER   AND   DEPUTY   SHERIFF**
13 | vs.                                 **CORPORAL   GIL'S   MOTION   FOR**
                                         **SUMMARY   JUDGMENT   OR,   IN   THE**
14 |                                     **ALTERNATIVE,           SUMMARY**
SACRAMENTO      COUNTY    SHERIFF'S      **ADJUDICATION**
15 | DEPARTMENT;  SHERIFF  SCOTT  JONES;
CHAPLAIN TOLIVER; DEPUTY SHERIFF
16 | CORPORAL GIL; DOES 01-25,            **No hearing pursuant to Local Rule 230(l)**

17 |
                  Defendants.           Complaint Filed: 10/14/13
18 |

19 | _____/

20 |

21 |       I, MARY KIMBRELL, declare as follows:

22 |       1.      I am the Litigation Coordinator for the California Department of Corrections and

23 | Rehabilitation at Corcoran State Prison.

24 |       2.      I make this Declaration on my own personal knowledge. If called upon to do so, I could

25 | and would competently testify about the matters asserted herein.

26 |       3.      I conducted a search of Plaintiff Frank Lee Dearwester's (AP9119) records maintained by

27 | California Department of Corrections and Rehabilitation.

28 |

---

1

**DECLARATION OF MARY KIMBRELL IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND
DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION**

{01535862.DOCX}

1        4.    The search of these records revealed that no documents exist for Mr. Dearwester in

2    regards to a kosher diet at Corcoran State Prison.

3        I declare under penalty of perjury that the foregoing is true and correct. Executed this 20 day

4    of April, 2016, at Corcoran, California.

5

6        By    _____

7              Mary Kimbrell,
          Declarant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2**

**DECLARATION OF MARY KIMBRELL IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

{01535862.DOCX}

**Case Name: Dearwester v. Sacramento County Sheriff's Department**
**Case No.: 2:13-CV-02066-MCE-EFB P (TEMP)**

1

2

## DECLARATION OF SERVICE

3

I am a resident of the United States and am employed in the County of Sacramento, California.

4

I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

5

On the date below, I served the following: **INDEX OF EXHIBITS IN SUPPORT OF**

6

**DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF CORPORAL GIL'S**

**MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY**

7

**ADJUDICATION** on all parties in the said action as addressed below by causing a true copy thereof to be served:

8

9

| xxx | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
|-----|---|

10

11

Addressed as follows:

12

| **Plaintiff in Pro Per**: | |
|---|---|
| Frank Lee Dearwester | |
| AP9119 | |
| CA State Prison, Corcoran | |
| P.O. Box 8800 | |
| Corcoran, CA 93212 | |

13

14

15

16

17

I declare under penalty of perjury that foregoing is true and correct under the laws of the State of California. Executed on this 22nd day of April, 2016, in Sacramento, California.

18

19

Alison Renison

20

21

22

23

24

25

26

27

28

3

**INDEX OF EXHIBITS IN SUPPORT OF DEFENDANTS CHAPLAIN TOLIVER AND DEPUTY SHERIFF**
**CORPORAL GIL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY**
**ADJUDICATION**

{01530041.DOCX}